No. 13-2661

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

MARY E. SHEPARD and the ILLINOIS STATE RIFLE ASSOCIATION,

*Plaintiffs-Appellants*,

v.

LISA M. MADIGAN, *et al.*,

*Defendants-Appellees*.

On Appeal from United States District Court
for the Southern District of Illinois
Civil Case No. 11-CV-405-WDS (Honorable William D. Stiehl)

**EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

William N. Howard
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0333
(312) 896-6433 (Fax)

Charles J. Cooper
David H. Thompson
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (Fax)

*Attorneys for Plaintiffs-Appellants*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................................4

ARGUMENT .............................................................................................8

I.  PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE HARM DUE TO ENFORCEMENT OF ILLINOIS'S UUW AND AUUW STATUTES........................... 9

II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THIS CASE IS NOT MOOT. ........................................................................11

III. THE BALANCE OF HARMS DECISIVELY SUPPORTS PLAINTIFFS. ......................17

IV. MOVING FIRST IN THE DISTRICT COURT WOULD BE IMPRACTICABLE............19

CONCLUSION ........................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                           **<u>Page</u>**

*Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544 (7th Cir. 2007)......................................8

*Diffenderfer v. Central Baptist Church*, 404 U.S. 412 (1972) ..........................12, 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................10

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ......................8, 9, 10, 11, 19

*Federation of Adver. Indus. Reps., Inc. v. City of Chicago*,
  326 F.3d 924(7th Cir. 2003)...............................................................13, 14

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
  710 F.3d 99 (3d Cir. 2013) .....................................................................17

*Kremens v. Bartley*, 431 U.S. 119 (1977).......................................................11, 12

*Lewis v. Continental Bank*, 494 U.S. 472 (1990) ....................................................12

*Massachusetts v. Oakes*, 491 U.S. 576 (1989).........................................................13

*Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995).........................................................14

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ...........................................*passim*

*Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*,
  393 F. App'x 390(7th Cir. 2010)............................................................15

*Princeton Univ. v. Schmid*, 455 U.S. 100 (1982) ....................................................13

*Selcke v. New England Ins. Co.*, 2 F.3d 790 (7th Cir. 1993)....................................11

*U.S. Dep't of Treasury, BATF v. Galioto*, 477 U.S. 556 (1986) ............................14

**<u>Statutes and Rules</u>**

FED. R. APP. P. 8(a)(2) ...............................................................................................1

FED. R. APP. P. 8(a)(2)(A)(i)....................................................................................19

Firearm Concealed Carry Act, Pub. Act 098-0063 (Ill.), *available at*
  http://www.ilga.gov/legislation/publicacts/98/PDF/098-0063.pdf .................2, 18

430 ILCS 65/2(a) .....................................................................................................18

430 ILCS 65/8..........................................................................................................18

720 ILCS 5/24-1(a)(4)&(10).............................................................................1, 4, 20

720 ILCS 5/24-1.6(a)(3)(A)-(B) ......................................................................1, 4, 20

720 ILCS 5/24-1.6(a)(3)(C) .......................................................................18

**<u>Other</u>**

*Application for Firearm Owner's Identification Card*, ISP,
http://www.isp.state.il.us/docs/6-181.pdf.............................................18

David Heinzmann *et al.*, *How Gun Law Works*, Chicago Tribune, July 9, 2013,
available at http://www.chicagotribune.com/news/local/ct-met-illinois-concealed-carry-whats-next-0709-2-20130710,0,4059241,full.story....................7

*Concealed Carry Frequently Asked Questions*, ISP,
http://www.isp.state.il.us/firearms/ccw/ccw-faq.cfm................................3

Mike Danahey, *Gun Owner ID Card Wait More Than Two Months*, Chi. Sun-Times, Mar. 27, 2013, 2013 WLNR 7498109 .......................................3

Pursuant to FED. R. APP. P. 8(a)(2), Plaintiffs-Appellants, Mary E. Shepard and the Illinois State Rifle Association ("Plaintiffs"), respectfully move this Court for an injunction pending appeal. In particular, Plaintiffs seek an injunction prohibiting Defendants-Appellees ("Defendants" or "the State") from enforcing Illinois's ban on carrying firearms in public—codified at 720 ILCS 5/24-1(a)(4)&(10) and 720 ILCS 5/24-1.6(a)(3)(A)-(B)—against Ms. Shepard and members of the Illinois State Rifle Association for carrying firearms in a manner consistent with the limitations imposed by §65 of the Firearm Concealed Carry Act.

In the alternative, to allow for prompt adjudication of this appeal and to reduce the risk of it becoming moot before being decided, Plaintiffs request that this Court treat Plaintiffs' motion as their opening brief and expedite the briefing of this appeal such that Defendants' response would be due August 5 and Plaintiffs' reply due August 8. In support of their motion, Plaintiffs state as follows:

## INTRODUCTION

This case concerns (i) Plaintiffs' successful constitutional challenge to Illinois's statutes banning law-abiding citizens from bearing firearms in public for self-defense ("the Gun Carry Ban"), and (ii) the district court's refusal to enter the relief mandated by this Court. On December 11, 2012, this Court ruled that the Second Amendment "confers a right to bear arms for self-defense, which is as important outside the home as inside." *Moore v. Madigan*, 702 F.3d 933, 942 (7th

Cir. 2012).  Accordingly, this Court "reverse[d] the decision[]" of the district court "and remand[ed] … for the entry of declarations of unconstitutionality and permanent injunctions" against enforcement of the challenged Illinois statutes.  *Id.*

This Court *sua sponte* stayed issuance of its mandate for 180 days to give Illinois time to rectify its constitutional violation.  *Id.*  At the State's behest, this Court extended that stay for another 30 days.  That stay expired and this Court's mandate finally issued on July 9, 2013, before Illinois had enacted a public-carry statute, let alone implemented it.  The next day, Plaintiffs moved the district court for entry of the relief mandated by this Court, but the district court refused and instead granted the State's motion to dismiss on the supposition that Plaintiffs' claims had been mooted by Illinois's enactment (on July 9, 2013) of the Firearms Concealed Carry Act ("FCCA"), Pub. Act 098-0063 (Ill.), *available at* http://www.ilga.gov/legislation/publicacts/98/PDF/098-0063.pdf.

The mere passage of the FCCA did not moot this case.  Indeed, the FCCA did not repeal the Illinois laws banning the public carrying of firearms.  Rather, it amended them to provide an exception for citizens who have been issued a Concealed Carry License.  *See* FCCA, § 155.  Crucially, however, the FCCA provides the Illinois State Police (the "ISP") with up to *180 days* to make license application forms available and up to *another 90 days* to process submitted applications.  *See* FCCA, §§ 10(d)-(e).  Thus, even assuming the ISP meets these statutory dead-

lines,[1] the State's unconstitutional "flat ban on carrying ready-to-use guns outside the home," *Moore*, 702 F.3d at 940, may effectively remain in place for up to *another 270 days* from July 9, 2013—April 5, 2014. Thus, mere passage of the FCCA did nothing to change the fact that Plaintiffs continue be categorically prohibited from carrying firearms in public to defend themselves.[2]

Indeed, ISP has warned the citizens of Illinois that it will "continue to enforce the law in effect" and that, under that law, "citizens cannot lawfully carry concealed weapons without a valid Illinois Concealed Carry License. Citizens who carry loaded firearms without a Concealed Carry License issued by the ISP are subject to arrest." *Concealed Carry Frequently Asked Questions*, ISP, http://www.isp.state.il.us/firearms/ccw/ccw-faq.cfm. But, as the ISP admits, Carry License applications are not available and licenses may not begin to issue until April of next year. *Id.* ("The ISP will make applications available to the public by January 5, 2014.... Upon receipt of a qualified application, the ISP shall issue or deny the applicant an Illinois Concealed Carry License within 90 days ....").

---

[1] *But see, e.g.*, Mike Danahey, *Gun Owner ID Card Wait More Than Two Months*, CHI. SUN-TIMES, Mar. 27, 2013, 2013 WLNR 7498109 (reporting delays well beyond the 30-day statutory time limit in processing Firearm Owner Identification cards).

[2] When describing the effects of Illinois's laws on "Plaintiffs," we intend to include the effects on the members of the Illinois State Rifle Association on whose behalf the organization brings this action.

Thus, the same laws that violated Plaintiffs' Second Amendment rights on May 13, 2011 when they filed their Complaint—the very laws that this Court ruled unconstitutional on December 11, 2012—are still being enforced and continue to flatly and categorically criminalize Plaintiffs' exercise of their Second Amendment rights. Manifestly, Plaintiffs' Second Amendment claims are not moot, but very much alive.

The court below ruled that Illinois may continue to enforce the statutes that this Court has declared unconstitutional until Illinois feels ready to implement its FCCA—which, under the FCCA's terms, will take as long as an additional nine months. The district court refused to comply with this Court's mandate to declare the Illinois statutes unconstitutional and to permanently enjoin their enforcement. That defiance of this Court's judgment *perpetuates*—rather than *moots*—the irreparable violation of Plaintiffs' fundamental rights. Plaintiffs' therefore move for an injunction against the enforcement of laws this Court has already held unconstitutional pending resolution of this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Until this Court's decision in *Moore*, Illinois was the only State in the Union that forbade law-abiding citizens from carrying firearms in public for self-defense. Provisions of two Illinois criminal statutes—720 ILCS 5/24-1(a)(4)&(10) (the "Unlawful Use of Weapons" or "UUW" law) and 720 ILCS 5/24-1.6(a)(3)(A)-(B)

4

(the "Aggravated Unlawful Use of a Weapon" or "AUUW" law)—ban the carrying of firearms in public by law-abiding citizens who are otherwise qualified by Illinois law to possess firearms.

Mary Shepard is 73-years-old and was savagely beaten while working at the First Baptist Church in Union County, Illinois in 2009. Shepard Decl., Doc. 39-1, ¶¶ 11-15. It is undisputed that Ms. Shepard: (i) possesses an Illinois Firearm Ownership Identification Card ("FOID card"), authorizing her to own a firearm; (ii) has no criminal record; (iii) has taken at least five courses in firearms safety and training; and (iv) is already licensed to carry a firearm in Pennsylvania and Florida. *Id*. ¶¶ 3-8. Yet Illinois law does not permit her to carry a firearm in public for her own protection. The Illinois State Rifle Association has many members who are legally qualified to possess firearms in Illinois and who would carry firearms for self-defense in public but for the Illinois Gun Carry Ban. Moran Decl., Doc. 39-2, ¶ 5.

Plaintiffs filed this action in the Southern District of Illinois on May 13, 2011, contending that the Illinois Gun Carry Ban violated the Second Amendment, as incorporated against the states by the Fourteenth Amendment. Doc. 2. The district court below dismissed Plaintiffs' claims and they timely filed an appeal to this Court. *See* Doc. 57, 58. That appeal was consolidated with a similar suit, *Moore*

*v. Madigan*, pending in the Central District of Illinois, and this Court issued a consolidated opinion on *Shepard* and *Moore* on December 11, 2012.

The Court held that Illinois's "flat ban on carrying ready-to-use guns outside the home" categorically violates the fundamental Second Amendment right to bear arms. *Moore*, 702 F.3d at 940. The Court therefore ruled that the two Illinois criminal statutes, the UUW and AUUW, were unconstitutional and remanded the case to the district court "for the entry of declarations of unconstitutionality and permanent injunctions." *Id.* However, the Court, exercising extraordinary forbearance, *sua sponte* stayed its mandate for 180 days to allow the State of Illinois to establish a licensing regime that would allow the public carrying of firearms consistent with Second Amendment rights. *Id.*

Illinois, however, did not meet this deadline. On June 3, 2013, a week before the stay was to expire, the State petitioned this Court to extend the stay of its mandate for another thirty days. The Court granted that request but warned that "[n]o further extensions to stay the court's mandate will be granted." Order, *Shepard v. Madigan*, No. 12-1788 (7th Cir. June 4, 2013), ECF No. 76. Accordingly, this Court issued its mandate on July 9, 2013, "when no law had yet been passed" by Illinois, as the district court below acknowledged. Doc. 89 at 3.

Later that day, Illinois enacted the FCCA. But, as described above, the FCCA does not repeal the Illinois Gun Carry Ban, but rather amends Illinois law to

6

provide that the ban shall not apply to an individual who has been issued a license under the FCCA.  The FCCA ensures that the violation of Plaintiffs' (and every other law-abiding Illinois citizens') Second Amendment rights will continue for quite some time, because the FCCA provides that the ISP need not issue license application forms for another 180 days and need not actually issue a Carry License for another 90 days after that.

> In sum, ISP

> officials have 180 days—roughly six months—to create an application process.  Once they begin accepting applications, [ISP spokeswoman Monique] Bond said it will take them about 90 days to process and screen the first round of applications and begin issuing permits.  *Until then, the ban on concealed carry will remain officially in effect.*[3]

Within 30 minutes of the FCCA's enactment, the State filed a motion in the court below to dismiss Plaintiffs' case as moot.  Doc. 73.  Less than 24 hours after that, Plaintiffs filed their response describing the continuing enforcement by Illinois of the UUW and the AUUW and hence the continuing violation of—and consequent Article III controversy about—Plaintiffs' Second Amendment rights.  Doc. 74.  Plaintiffs also filed their motion asking the district court to issue the declaratory and permanent injunctive relief expressly mandated by this Court.  Doc. 75.

---

[3] David Heinzmann *et al.*, *How Gun Law Works*, CHICAGO TRIBUNE, July 9, 2013 (emphasis added), *available at* http://www.chicagotribune.com/news/local/ct-met-illinois-concealed-carry-whats-next-0709-2-20130710,0,4059241,full.story.

The district court conceded that Plaintiffs were absolutely correct that "the mandate of the Court of Appeals directs this Court to enter a preliminary and permanent injunction enjoining the defendants from enforcing these Illinois statutes." Doc. 81 at 1. Yet the district court refused to do so. Indeed, the court below acknowledged: (i) that "[t]he Seventh Circuit determined in *Moore* … that the then-controlling Illinois laws … were unconstitutional," Doc. 89 at 2; (ii) that this Court held that the "State of Illinois had failed to meet its required showing that … 'its uniquely sweeping ban is justified by an increase in public safety,' " *id*. at 3 (quoting *Moore*); (iii) that the FCCA authorizes the ISP to delay issuing even a single carry permit for as long as nine more months, *id*. at 4-5, 9; (iv) that "[a]lthough the licensing scheme is not yet completed," the FCCA will someday in the future "permit the plaintiffs to apply for" a permit, *id*. at 7, 9, and finally, (v) that until the "permitting process is completed," *id.* at 9, *the existing, unrepealed Illinois laws that are still being enforced criminalize carrying firearms in public*.

Thus the district court below dismissed Plaintiffs' claims as moot on the basis of the FCCA—while nonetheless conceding that Plaintiffs' constitutional rights continue to be violated every day by the UUW and AUUW statutes that this Court unambiguously ordered the district court to enjoin.

## ARGUMENT

This Court assesses a motion for an injunction pending appeal using the same approach that governs an application for a preliminary injunction. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007). The Court thus determines whether the moving party has shown "that it has (1) no adequate remedy at law and will suffer irreparable harm if [an] injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If these "threshold requirements" are met, the Court then "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* Under this standard, Plaintiffs are entitled to an injunction pending appeal.

## I.   PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE HARM DUE TO ENFORCEMENT OF ILLINOIS'S UUW AND AUUW STATUTES.

As explained above, the FCCA does not promise Plaintiffs relief from the daily, irreparable violation of their Second Amendment rights until April of 2014. Such foot-dragging in enforcing Plaintiffs' enumerated constitutional rights and implementing this Court's mandate is wholly unacceptable. This Court has held that, when it comes to violations of the Second Amendment, "*irreparable harm is presumed.*" *Ezell*, 651 F.3d at 699 (emphasis added). Under *Moore,* Plaintiffs' Second Amendment rights are being trampled. It is now settled law that Illinois's ban on public carriage of firearms is a violation of the Second Amendment right to

9

bear arms in public for self-defense in the event of confrontation. *See Moore*, 702 F.3d at 935-36 ("*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' … Confrontations are not limited to the home.").

But quite apart from the presumption of harm established by this Court in *Ezell*, irreparable harm would in any event be obvious in this case. Again, the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). "Confrontation" is a rather sterile term for the beating inflicted on Ms. Shepard in 2009. She lives in mortal fear that she will once again be the victim of a savage assault from which she will once again be defenseless. *See* Shepard Decl., Doc. 39-1, ¶¶ 19-21. This injury is not an abstract legal proposition for Ms. Shepard: she wants, needs, and is entitled to exercise her Second Amendment right to armed self-defense *right now*.

Moreover, just as this Court in *Ezell* ruled (referring to a Chicago ordinance requiring firing-range training as a prerequisite to lawful gun ownership but prohibiting all firing ranges within the city) that the ordinance's "very existence stands as a fixed harm to every Chicagoan's Second Amendment right to maintain proficiency in firearm use by training at a range," 651 F.3d at 699, so too Illinois's un-

10

constitutional ban on public carriage of firearms by law-abiding citizens stands as a fixed harm to their Second Amendment right to bear arms for self-defense. This sort of ongoing, unabated, fully adjudicated violation of an enumerated constitutional right epitomizes irreparable harm.

## II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THIS CASE IS NOT MOOT.

1.  Illinois has effectively arrogated the power to grant itself that which this Court expressly refused in its June 4, 2013 Order—a further stay of the Court's mandate. This is untenable. Just as the City of Chicago could not require firearms training before a citizen could lawfully own a gun while at the same time banning firing ranges from the City, *see Ezell*, 651 F.3d at 711, Illinois cannot require law-abiding citizens with FOID cards to procure a further license to carry a concealed firearm while delaying the issuance of such licenses for months on end, during which time the unconstitutional ban on public carriage remains in effect.

It is of no import that *eventually*, once Illinois's new licensing scheme is fully operational, Plaintiffs will be able to exercise their Second Amendment rights. As Judge Posner remarked in *Selcke v. New England Insurance Co.*, 2 F.3d 790, 792 (7th Cir. 1993), "a case does not become moot merely because it is highly likely to become moot shortly." Here, the essential facts are (i) that Plaintiffs' Second Amendment rights are being violated *right now*, and (ii) that such irreparable harm continues every day that Illinois's Gun Carry Ban remains in effect.

11

2.     The authorities relied upon by the court below in its analysis of moot-ness in fact establish that Plaintiffs' claims are *not* moot.  *See* Doc. 89 at 5-9.  The Supreme Court concluded that the plaintiffs' claims had been mooted in *Kremens v. Bartley*, 431 U.S. 119 (1977), because the intervening legislation "eradicated" the harm to the plaintiffs—the new statute "applied *immediately to all persons*" and "*immediately*" conferred upon the plaintiffs "*total freedom*" to exercise the rights they sought to vindicate in their lawsuit.  *Id*. at 129 (emphases added).  Here, to the contrary, the FCCA *perpetuates* Plaintiffs' constitutional injury for up to an-other nine months—and this is *after* Illinois was given seven full months by this Court to put a firearms-carry permitting regime in place.

In *Lewis v. Continental Bank*, 494 U.S. 472 (1990), the Supreme Court ruled that the plaintiff bank lacked Article III standing because it had no " 'specific live grievance' against the application of the [challenged] statutes" to itself, but instead sought to challenge the application of the statutes to a different kind of bank.  *Id*. at 479.  Here, Plaintiffs continue to object to the application to themselves of Illi-nois's UUW and AUUW, the laws that were challenged in their Complaint and against which they were awarded injunctive and declaratory relief by this Court (although the district court has thus far refused to issue said relief).   Illinois's new-ly enacted FCCA does not repeal the UUW or the AUUW, and this ensures that Plaintiffs will continue to have a "specific, live grievance" insofar as they will, for

12

the next nine months, remain barred by those two criminal statutes from exercising their Second Amendment rights.

In *Diffenderfer v. Central Baptist Church*, 404 U.S. 412 (1972) (*per curiam*), the Supreme Court held that the plaintiff's challenge to a statute was moot because the law had been repealed and the case was not "the kind of case that may produce irreparable injury if not decided immediately." *Id*. at 414. The FCCA did not repeal either of the Illinois statutes challenged here, and by delaying relief beyond the stay granted by this Court, the FCCA *guarantees* that the Plaintiffs will continue to suffer irreparable injury to their Second Amendment rights.

In *Massachusetts v. Oakes*, 491 U.S. 576 (1989), which involved a criminal prosecution that implicated freedom of speech, the case became moot because the lower court had reversed the defendant's conviction and the Massachusetts legislature had then repealed the challenged statute. *Id*. at 580, 582-83. Similarly, in *Princeton University v. Schmid*, 455 U.S. 100 (1982), the defendant-appellee's conviction for trespassing on university property had been reversed by the New Jersey Supreme Court, and "the regulation at issue [wa]s no longer in force." *See id*. at 101, 103. The Supreme Court therefore naturally found that the defendant's overbreadth challenge to the repealed regulation was moot. *Id*. at 103. The contrast with the present case could not be starker. Here there has been no repeal and Plaintiffs remain subject to arrest and prosecution.

13

*Federation of Adver. Indus. Reps., Inc. v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003), is inapposite because there the defendant city had, on the basis of an intervening Supreme Court decision in a different case involving a similar law, repealed the challenged ordinance before the case was fully briefed and submitted to the district court. *Id*. at 928. The plaintiff's only argument for why the repeal did not moot its challenge to the ordinance was the wholly unsubstantiated and cynical speculation that the City might reenact the ordinance someday. *See id.* at 929. This Court unsurprisingly held that was insufficient to maintain an Article III case or controversy. *See id*. at 929-31. The *Federation* case has no bearing on this case, where the statutes challenged by the Plaintiffs have most definitely *not* been "repealed" and are still being actively enforced by the State.

In *United States Dep't of Treasury, BATF v. Galioto*, 477 U.S. 556 (1986), Congress amended the challenged statute before the case got to the Supreme Court and thereby mooted the "irrebutable presumption" and "equal protection" issues that the plaintiff had raised. *Id*. at 559. The challenged law no longer discriminated against the plaintiff, so the Court vacated the lower court decision on those issues and remanded for consideration of the plaintiff's other arguments, which had not been mooted by the change in the law. *See id.* at 559-60. Similarly, in *Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995), the challenged state law had been amended by the time the case got to this Court, and when the question of mootness was

14

raised the plaintiffs did not "contend that the revision leaves them under the same burden that led to the suit." *Id*. at 164.  Here, the Illinois Gun Carry Ban continues to impose the same burden on the Plaintiffs as when this case began.

Finally, in *Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*, 393 F. App'x 390 (7th Cir. 2010), after the Supreme Court rejected the argument that the Second Amendment did not apply to them, Chicago and the Village of Oak Park "repealed the ordinances that had been the subject of [the] litigation" such that the "subject matter of [the] litigation ... no longer exist[ed]."  Thus, this Court held that the plaintiffs' contentions that "the *new* ordinances enacted to supersede the ones challenged ... [had] constitutional flaws" would have to be "pursue[d] ... in new suits." *Id*. (emphasis added).  Here, Illinois has not repealed the laws that form the subject of this litigation, but has rather enacted an exception to them that will not be operative for another nine months.  And Plaintiffs are not challenging aspects of the new permitting process, but rather the complete ban on carrying firearms that continues to exist until that process is up and running.  Thus, far from "no longer exist[ing]," the subject matter of this litigation is alive and well, and the State of Illinois continues to impose irreparable harm on its citizens by flatly prohibiting them from exercising their Second Amendment right to carry a firearm in public.

3.     In concluding that Plaintiffs must bring their claims in a new lawsuit, the court below asserted that this Court "gave the State legislature 180 days (with a

15

30 day extension) to complete [the] task" of crafting a new, constitutional firearms law, and it insisted that "the Court of Appeals *did not* direct the State of Illinois to *both* pass new gun legislation *and* have the permitting or licensing processes operational before the expiration period of the stay of the mandate."  Doc. 89 at 9-10 (emphasis in original).  This is less an argument than a play on words.

Plaintiffs concur that it is unlikely that this Court envisioned that a permitting process would spring into existence overnight—*that is why it gave the State of Illinois seven months to establish one.*  The Court made clear that the clock was running and that its mandate would take effect and injunctions would issue as soon as the stay expired.  *See Moore*, 702 F.3d at 942.  This Court quite properly left to Illinois the decision of how many of its 210 days Illinois should devote to drafting legislation defining the permit process, and how many days it should devote to implementing that process.  That Illinois chose to enact the FCCA only *after* the extended stay had expired is no excuse for not complying with this Court's mandate.

Thus the State of Illinois's administrative struggles and shortcomings are entirely of its own making.  Let us not forget which parties have been violating (and continue to violate) enumerated constitutional rights, and which parties have sought only to exercise the freedoms guaranteed them by the Second Amendment.

Plaintiffs seek only the relief that they were promised in this Court's decision last year.  It is beyond cavil that the Court's mandate was stayed for 210 days,

16

and not for the extra 270 days that the State of Illinois has now awarded itself. Thus, although any potential substantive challenge to the constitutionality of the new FCCA would properly be raised in a new lawsuit, this Court has jurisdiction on this appeal to mandate, *forthwith*, that Plaintiffs *receive the relief this Court already awarded them seven months ago in this very case.*

## III.   THE BALANCE OF HARMS DECISIVELY SUPPORTS PLAINTIFFS.

The balance of harms strongly favors issuance of an injunction.  As shown above, the challenged Illinois statutes continue to inflict daily, irreparable harm on Plaintiffs, and Plaintiffs' likelihood of success on the merits follows directly from the mandate of this Court directing that those statutes be declared unconstitutional and enjoined.  And of course, "the enforcement of an unconstitutional law vindicates no public interest."  *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013).

Furthermore, this Court's decision in *Moore* forecloses any argument that public safety concerns can justify allowing the State to continue violating Plaintiffs' Second Amendment rights.  As this Court concluded, "[t]he key legislative facts in this case are the effects of the Illinois law; the state has failed to show that those effects are positive."  *Moore*, 702 F.3d at 942.   The Court relied, among other things, on social science research concluding that, "[b]ased on available empirical data,... we expect relatively little public safety impact if courts invalidate laws

that prohibit gun carrying outside the home, assuming that some sort of permit sys-

tem for public carry is allowed to stand." *Id.* at 938 (quoting Philip J. Cook, et al.,

*Gun Control After* Heller, 56 UCLA L. REV. 1041, 1082 (2009)).  While Illinois's

concealed carry licensing system is not yet in place, unlike most other States Illi-

nois generally requires law-abiding citizens to obtain a permit—a FOID card—*to*

*lawfully possess a gun, whether in public or in private*.  *See* 430 ILCS 65/2(a); 720

ILCS 5/24-1.6(a)(3)(C).  Indeed, by applying for a FOID card, a citizen authorizes

the state to conduct a thorough investigation, including of her "citizenship, crimi-

nal history and mental health treatment or history."  *See Application for Firearm*

*Owner's Identification Card*, ISP, http://www.isp.state.il.us/docs/6-181.pdf.  And

the State may deny the application if this investigation results in a finding that the

person is a felon, a drug addict, or otherwise unable to meet the requirements

for possessing a firearm in Illinois. *See* 430 ILCS 65/8.  Plaintiffs' requested

injunction would do nothing to upset this regime.

　　　Nor would the requested injunction upset the Illinois Legislature's de-

termination regarding *where* a firearm may be carried in public.  As they did

in the district court, Plaintiffs are requesting a right to carry a firearm con-

sistent with the limitations on such carriage set forth in Section 65 of the

FCCA (restricting carriage, *e.g.*, in schools and child-care facilities and on public

transportation).  Plaintiffs, in other words, are essentially asking that their FOID

cards operate as carry licenses under the FCCA for the time being.

Finally, the State of Illinois ultimately retains control of when this case will

actually become moot.  While the FCCA gives Illinois up to 270 days to begin is-

suing licenses, it does not *require* it to wait that long.  And once the licensing sys-

tem is operational with licenses being issued on a timely basis, the State can seek

relief from any injunction issued in this case.

As this Court has held, the Second Amendment, like the First, "protects ...

intangible and unquantifiable interests," infringements of which "cannot be com-

pensated by damages."  *Ezell*, 651 F.3d at 699.  "It's hard to imagine anyone sug-

gesting that" the State of Illinois could unilaterally extend by 270 days a "prohib-

it[ion] [of] the exercise of a free-speech or religious-liberty right" that this Court

had already declared unconstitutional and given the State 210 days to rectify.  *Id*. at

697.  "That sort of argument should be no less unimaginable in the Second

Amendment context," *id.*, but it is precisely the argument that the Defendants ad-

vance here and that the court below accepted.

## IV.  MOVING FIRST IN THE DISTRICT COURT WOULD BE IMPRACTICABLE.

Plaintiffs have not sought an injunction pending appeal in the district court

and respectfully submit that doing so "would be impracticable."  FED. R. APP. P.

8(a)(2)(A)(i).  Having already dismissed the case as moot, the district court is un-

likely to award Plaintiffs further relief.  And the Court below took over two weeks to deny Plaintiffs' motion for an injunction following the issuance of this Court's mandate.  Plaintiffs should not be required to risk further irreparable harm and delay in vindicating their fundamental Second Amendment rights by moving first in the district court.  Indeed, Plaintiffs' motion for an injunction and corresponding opposition to Defendants' motion to dismiss rested on the same grounds as its motion to this Court—*i.e.*, that passage of the FCCA has not mooted their case and that they are entitled to receive immediately the relief this Court has already mandated.  *See* Docs. 74, 75, 87.  Only delay would be gained by requiring Plaintiffs to resubmit those arguments to the district court before seeking relief from this Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter an injunction pending appeal prohibiting Defendants from enforcing Illinois's ban on carrying firearms in public—codified at 720 ILCS 5/24-1(a)(4)&(10) and 720 ILCS 5/24-1.6(a)(3)(A)-(B)—against Ms. Shepard and members of the Illinois State Rifle Association for carrying firearms in a manner consistent with the limitations imposed by Section 65 of the FCCA.

In the alternative, Plaintiffs request that this Court treat Plaintiffs' motion as their opening brief and expedite the briefing of this appeal such that Defendants' response would be due August 5 and Plaintiffs' reply due August 8.

Dated:  July 30, 2013                    Respectfully submitted,

William N. Howard                        s/ Charles J. Cooper
LOCKE LORD LLP                           Charles J. Cooper
111 South Wacker Drive                   David H. Thompson
Chicago, Illinois   60606                Peter A. Patterson
(312) 443-0333                           COOPER & KIRK, PLLC
(312) 896-6433 (Fax)                     1523 New Hampshire Avenue, N.W.
                                         Washington, D.C. 20036
                                         (202) 220-9600
                                         (202) 220-9601 (Fax)


          *Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2013, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the CM/ECF system.

I further certify that not all participants in the case are CM/ECF users.  I

have caused the foregoing document to be mailed by First Class Mail, postage

prepaid, to the following non-CM/ECF participant; I have also had an email

including a copy of the foregoing document sent to this participant:

Terrence J. Corrigan
OFFICE OF THE ATTORNEY GENERAL
500 South Second Street
Springfield, IL 62706
tcorrigan@atg.state.il.us

s/ Charles J. Cooper
Charles J. Cooper
*Attorney for Plaintiffs-Appellants*
