# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| MARY E. SHEPARD and the ILLINOIS STATE RIFLE ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> LISA M. MADIGAN, solely in her official capacity as ATTORNEY GENERAL OF ILLINOIS, GOVERNOR PATRICK J. QUINN, solely in his official capacity as Governor of the State of Illinois, TYLER R. EDMONDS, solely in his official capacity as the State's Attorney of Union County, Illinois, and SHERIFF DAVID LIVESAY, solely in his official capacity as Sheriff of Union County, <br><br> Defendants. | No. 3:11-cv-00405-WDS-PMF <br><br><br> Honorable Judge William D. Stiehl <br> Magistrate Judge Philip M. Frazier |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AS MOOT**

Defendants (Doc. No. 73) move to dismiss the Complaint because the State has enacted a new law, the Firearms Concealed Carry Act ("FCCA"), Public Act 098-0063 (Ill.), *available at* http://ilga.gov/legislation/publicacts/98/PDF/098-0063.pdf, that, we are told, moots Plaintiffs' constitutional challenge to the Illinois Unlawful Use of Weapons ("UUW") statute and the Illinois Aggravated Unlawful Use of a Weapon statute ("AUUW"). But in truth, Defendants' own authorities establish that Plaintiffs' claims have not been mooted. *See* Doc. No. 73 at ¶ 5 (citing cases).

To begin with, *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346 (D.C. Cir. 1997), held, on the very page cited by Defendants, that the question whether intervening legislation has mooted a case is "govern[ed]" by "voluntary cessation analysis," and that "generally

1

voluntary cessation of challenged activity does not moot a case." *Id.* at 349. A "court may conclude that voluntary cessation has rendered a case moot" *only* "if the party urging mootness demonstrates that (1) 'there is no reasonable expectation that the alleged violation will recur,' and (2) 'interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.' " *Id.* at 349 (citation omitted). Thus the burden in proving mootness is on Defendants, and as the law stands now they cannot fulfill either prong of that test.

Defendants cannot meet the first prong because the FCCA did not repeal either the UUW or the AUUW. It is undisputed that those statutes remain on the books and will continue to criminalize the public carrying of a firearm by the Plaintiffs until the new permitting system envisioned by the FCCA is in place and carry permits have been issued to Ms. Shepard and to the members of the Illinois State Rifle Association ("ISRA"). *See* Illinois State Police, Concealed Carry Frequently Asked Questions, at http://www.isp.state.il.us/firearms/ccw/ccw-faq.cfm ("The Illinois State Police will continue to enforce the law in effect after July 9, 2013." Under that law "citizens cannot lawfully carry concealed weapons without a valid Concealed Carry License. Citizens who carry loaded firearms without a Conceal Carry License issued by the Illinois State Police are subject to arrest.").

The Plaintiffs' Second Amendment rights have been violated each and every day since December 11, 2012, when the Seventh Circuit reversed this Court and held that the UUW and the AUUW violated the Plaintiffs' rights. *See Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). Indeed, they have been violated each and every day since Illinois enacted its carry ban. *See Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011). The FCCA makes plain that said violation of the Plaintiffs' rights will not cease for up to another 270 days—180 days to make applications forms available and another 90 days to process said applications. FCCA §§

2

10(d)-(e); *see also* Illinois State Police, Concealed Carry Frequently Asked Questions ("The ISP will comply with the mandates of the Act. The application will be available within 180 days of the effective date and licenses will be issued 90 days after a qualified application is submitted."). "Until then, the ban on concealed carry will remain officially in effect." David Heinzmann et al., *How Gun Law Works; Concealed Carry Permits Likely Won't Be Issued Until Next Year*, CHICAGO TRIBUNE, July 9, 2013 (emphasis added), *available at* http://www.chicagotribune.com/news/local/ct-met-illinois-concealed-carry-whats-next-0709-2-20130710,0,4059241,full.story. The State has effectively given itself that which the Seventh Circuit refused—a further stay of the appellate court's mandate. Therefore, it is not merely a " 'reasonable expectation that the alleged violation will recur,'" *Nat'l Black Police Ass'n*, 108 F.3d at 349—it is a *certainty*. The violation of Plaintiffs' Second Amendment rights occurred today and will occur again tomorrow and each and every day until the expiration of the 270-day stay that Illinois has given to itself in the FCCA. Thus Defendants cannot meet the first prong of the voluntary-cessation test described above.

Nor can the Defendants meet the second prong of the test, because there has been no "'interim relief' " from the unconstitutional impact on the Plaintiffs of the UUW and the AUUW. *Nat'l Black Police Ass'n*, 108 F.3d at 349. Plaintiffs have been denied any relief for the last seven months, and now the State has arrogated to itself the power to grant itself a stay that ensures that Plaintiffs will get no "interim relief" for another nine months. Therefore it cannot be said that the intervening legislation has " 'completely or irrevocably eradicated the effects of the alleged violation.' " *Id.* at 349. Instead, the FCCA *perpetuates* the effects of the Second Amendment violation for another 270 days. This is in stark contrast to the situation in *Nat'l Black Police Ass'n*, where it was undisputed that the challenged law did not "continue to have any residu-

3

al effect." 108 F.3d at 350. Here the "residual effect" will, by force of Illinois law (in the form of the FCCA), continue for another nine months.

The rest of Defendants' mootness authorities are likewise inapposite. In *Thomas v. Feiler*, 884 F.2d 990 (7th Cir. 1989), the case was moot because "each of the named plaintiffs and the class members has had his or her suspension vacated by the district court's order." *Id.* at 996. Here there has been no suspension of the UUW and the AUUW and therefore the Plaintiffs remain barred from exercising their Second Amendment rights by those statutes; their status has not changed.

In *Diffenderfer v. Central Baptist Church*, 404 U.S. 412 (1972) (per curiam), the Supreme Court held that the plaintiff's claim was moot because that case was not "the kind of case that may produce irreparable injury if not decided immediately, *id.* at 414. In contrast, the FCCA, by delaying relief beyond the stay granted by the Seventh Circuit, *guarantees* that the Plaintiffs here will continue to suffer irreparable harm to their Second Amendment rights for another nine months. The Seventh Circuit has held that infringement of Second Amendment rights is "irreparable," *Ezell*, 651 F.3d at 699, and that individuals "suffer[] violations of their Second Amendment rights every day the [carry] ban is in effect," *id.* at 710.

The Supreme Court concluded that the plaintiffs' claims had been mooted in *Kremens v. Bartley*, 431 U.S. 119 (1977), because the intervening legislation "eradicated" the harm to the plaintiffs insofar as the new statute "applied immediately to all persons" and "immediately" conferred upon the plaintiffs "total freedom" to exercise the rights they sought to vindicate in their lawsuit. *Id.* at 129. Here, the FCCA does not relieve Plaintiffs' constitutional injury "immediately." To the contrary, the FCCA ensures that Plaintiffs will continue to suffer constitutional injury for another nine months.

In *Lewis v. Continental Bank*, 494 U.S. 472 (1990), the Court ruled that the plaintiff bank lacked Article III standing because it had no "'specific live grievance' against the application of the [challenged] statutes" to itself, but instead sought to challenge the application of the state's law to a different kind of bank. *Id.* at 479. Here, Mr. Shepard and the ISRA continue to object to the application to themselves of Illinois's UUW and AUUW, the laws that were challenged in their Complaint and against which they seek injunctive and declaratory relief. The State's newly enacted FCCA does not repeal the UUW or the AUUW, and this ensures that plaintiffs will continue to have a "specific live grievance" insofar as they will, for the next nine months, remain barred by those two statutes from exercising their Second Amendment right to carry a firearm in public for self-defense. In *Moore v. Madigan*, the Court of Appeals reversed the two decisions that had dismissed the claims of plaintiffs Moore and Shepard, "and remand[ed] them to their respective district courts for the entry of declarations of unconstitutionality and permanent injunctions." 702 F.3d at 943. That is the relief that Plaintiffs seek and that is the relief to which they are entitled. The UUW and AUUW continue to infringe Plaintiffs' Second Amendment rights, and Plaintiffs therefore have not only a "specific live grievance" against the Defendants as of today, they will, under the terms of the FCCA, continue to have that same grievance for the next 270 days to come.

Finally, *Fed'n of Adver. Ind. Representatives v. Chicago*, 326 F.3d 924 (7th Cir. 2003), is inapposite because there the plaintiffs were not entitled to fees under 42 U.S.C. § 1988 as the "prevailing party," so there was no need for further proceedings in the district court. In contrast, here the Plaintiffs manifestly prevailed in their constitutional challenge: the Seventh Circuit's ruling last December wrought a "judicially sanctioned change" in the law that Plaintiffs sought, and rendered an "enforceable judgment on the merits" that qualifies Plaintiffs as prevailing par-

ties and entitles them to an award of fees under § 1988. *Fed'n of Adver. Ind. Representatives,* 326 F.3d at 932.

In sum, Plaintiffs' constitutional grievance has not been mooted by the FCCA - instead, the FCCA perpetuates that grievance for at least another nine months.

                                         Respectfully Submitted,

                                         **MARY E. SHEPARD and THE ILLINOIS STATE RIFLE ASSOCIATION,**
                                         Plaintiffs

                                   By:   s/ William N. Howard
                                              One of their attorneys

William N. Howard
**LOCKE LORD LLP**
111 S. Wacker Dr.
Chicago, Illinois  60606
Tel:  312-443-0333
Fax:  312-896-6433
*email: whoward@lockelord.com*

## CERTIFICATE OF SERVICE

The undersigned attorney states that he caused a true and correct copy of **Plaintiffs' Response to Defendants' Motion to Dismiss as Moot,** to be served upon the parties of record, as shown below, via the Court's CM/ECF system on the **10th** day of **July, 2013**.

By:   s/ William N. Howard

## SERVICE LIST

Terence J. Corrigan
Illinois Attorney General's Office
500 S. Second St.
Springfield, IL  62706
Tel:  (217) 782-5819
Fax:  (217) 524-5091
tcorrigan@atg.state.il.us

Jonathan Lee Diesenhaus
Hogan Lovells LLP
555 13th Street, NW
Washington, DC 20004
Tel:  202-637-5416
Fax:  202-637-5910
jonathan.diesenhaus@hoganlovells.com

Karen L. McNaught
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62706
217-782-1841
Fax: (217) 524-5091
kmcnaught@atg.state.il.us

Charles J Cooper
Cooper & Kirk PLLC
1523 New Hampshire Avenue NW
Washington, DC 20036
202-220-9660
Fax: 202-220-9661
ccooper@cooperkirk.com

Joseph A. Bleyer
Bleyer & Bleyer
601 West Jackson
P.O. Box 487
Marion, IL 62959-0487
Tel: (618) 997-1331
jableyer@bleyerlaw.com

David A. Simpson
Illinois Attorney General's Office - Chicago 2
100 West Randolph Street
12th Floor
Chicago, IL 60601-3175
312-814-3419
dasimpson@atg.state.il.us

Karl Triebel
Illinois Attorney General's Office - Chicago 2
100 West Randolph Street
12th Floor
Chicago, IL 60601-3175
312-814-2391
Fax: 312-814-2253
ktriebel@atg.state.il.us