No. 13-2661

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| MARY E. SHEPARD and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) | Appeal from the United States District Court for the Southern District of Illinois |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 11-405-WDS-PMF |
| v. | ) ) | |
| LISA MADIGAN, et al., | ) ) | The Honorable William D. Stiehl, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES
LISA MADIGAN, PATRICK J. QUINN, AND TYLER R. EDMONDS**

LISA MADIGAN
Attorney General of Illinois

MICHAEL A. SCODRO
Solicitor General

JANE ELINOR NOTZ
Deputy Solicitor General

EVAN SIEGEL
CLIFFORD W. BERLOW
KARL R. TRIEBEL
Assistant Attorneys General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
(312) 814-2391
*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

Page(s)

JURISDICTIONAL STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    This Case Is Moot Because Plaintiffs Received Everything They Sought
      In Their Original Complaint, And Plaintiffs' Challenges To The New
      Act's Implementation And Application Review Periods Must Be Raised In
      A New Complaint.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    Plaintiffs' Original Complaint Is Moot. . . . . . . . . . . . . . . . . . . . . 12

      C.    Any Challenge To The Implementation And Review Periods
            Must Be Raised In A New Complaint. . . . . . . . . . . . . . . . . . . . . . 20

II.   In The Alternative, This Court Should Remand To Allow Defendants To
      Present Evidence Establishing That The New Act's Implementation And
      Review Periods Are Constitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

RULE 32(a)(7)(B) CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*ADT Sec. Services, Inc. v. Lisle-Woodridge Fire Protection Dist.*,
    Nos. 12-2925, 12-2981, 2013 WL 3927716 (7th Cir. July 31, 2013)). . . . . 18-19

*Coleman v. Lyng*,
    864 F.2d 604 (8th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dep't of Treasury, Bureau of Alcohol, Tobacco, & Firearms v. Galioto*,
    477 U.S. 556 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*Dist. of Columbia v. Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fed'n of Advertising Industry Reps., Inc. v. City of Chicago*,
    326 F.3d 924 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 16

*Galioto v. Dep't of Treasury, Bur. of Alcohol, Tobacco, & Firearms*,
    602 F. Supp. 682 (D.N.J. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kansas Judicial Review Bd. v. Stout*,
    562 F.3d 1240 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Lewis v. Continental Bank*,
    494 U.S. 472 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Luevano v. Wal-Mart Stores, Inc.*,
    No. 11-1917, 2013 WL 3599156 (7th Cir. July 16, 2013). . . . . . . . . . . . . . . . . 1

*Massachusetts v. Oakes*,
    491 U.S. 576 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Miller v. Benson*,
    68 F.3d 163 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Nat'l Black Police Ass'n v. Dist. of Columbia,*
    108 F.3d 346 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nat'l Rifle Ass'n v. City of Chicago,*
    646 F.3d 992 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nat'l Rifle Ass'n v. City of Chicago,*
    393 Fed. Appx. 390 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nick's Cigarette City, Inc. v. United States,*
    431 F.3d 516 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
    508 U.S. 656 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Princeton Univ. v. Schmid,*
    455 U.S. 100 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rembert v. Sheahan,*
    62 F.3d 937 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Zessar v. Keith,*
    536 F.3d 788 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes and Legislative History:**

18 U.S.C. § 921. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

P.A. 98-0063, 98th G.A. (Ill. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 13, 19

5 ILCS 100/5-40 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

5 ILCS 100/5-45 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

405 ILCS 5/6-103.1 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

405 ILCS 5/6-103.2 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

405 ILCS 5/6-103.3 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

430 ILCS 65/1.1 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

430 ILCS 65/13.1(a) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

430 ILCS 65/13.1(c) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

430 ILCS 66/1 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 13, 19

430 ILCS 66/10(a) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

430 ILCS 66/10(d) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17, 27

430 ILCS 66/10(e) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

430 ILCS 66/10(i) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23, 26

430 ILCS 66/15 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

430 ILCS 66/15(a) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

430 ILCS 66/20 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26

430 ILCS 66/20(a) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

430 ILCS 66/20(d) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

430 ILCS 66/25 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22, 25

430 ILCS 66/25(2) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24

430 ILCS 66/25(3) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

430 ILCS 66/25(4) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

430 ILCS 66/30(b)(3) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

430 ILCS 66/30(b)(8) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

430 ILCS 66/30(b)(9) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

430 ILCS 66/35 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22, 23

430 ILCS 66/40 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

430 ILCS 66/40(b) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

430 ILCS 66/40(e) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

430 ILCS 66/65(d) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

430 ILCS 66/75(a) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25, 26

430 ILCS 66/75(g) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

430 ILCS 66/75(i) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

430 ILCS 66/80 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

430 ILCS 66/80(a) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

430 ILCS 66/87 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26

430 ILCS 66/90 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

430 ILCS 66/95(b) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

720 ILCS 5/24-1(a)(4) (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8, 12

720 ILCS 5/24-1(a)(10) (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8, 13

720 ILCS 5/24-1.6 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8, 13

720 ILCS 5/24-1.6(a)(3)(A-5) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

720 ILCS 5/24-1.6(a)(3)(B-5) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

720 ILCS 5/24-2 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

http://ilga.gov/. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

http://my.ilga.gov.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

http://new.livestream.com/blueroomstream/. . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Rules, Reports and Articles**

Federal Rule of Civil Procedure 58.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Mgmt. Audit of Dep't of State Police's Admin. of Firearm Owner's Identification Act*,
Office of Auditor General (Apr. 2012), at Ch. 1 pp. 2-3, Ch. 2 pp. 20-34, *available at*
http://www.auditor.illinois.gov. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

"State Awards Contracts For Concealed Carry," (July 23, 2013), *available at*
http://www.sj-r.com/breaking/x946755648/State-awards-contracts-for-concealed-
carry.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' jurisdictional statement, App. Doc. 13-2, is not complete and correct.  The district court had jurisdiction over plaintiffs' complaint for declaratory and injunctive relief because plaintiffs raised federal constitutional claims under 42 U.S.C. § 1983, though that complaint no longer presents a case or controversy, *see infra* Part I.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.  On July 26, 2013, the district court entered judgment against plaintiffs and granted defendants' motion to dismiss the complaint as moot. Doc. 89.  Although the language of the judgment appears to dispose of all parties' claims (except for plaintiffs' claims to attorneys' fees and costs), *id.* at 10, the district court did not enter a separate judgment order under Rule 58 of the Federal Rules of Civil Procedure.  Based on the district court's order, however, it appears the court "is done with [the] case" except for the issue of attorneys' fees and costs, and thus this Court may treat the district court's July 26, 2013 order as a final, appealable judgment.  *Luevano v. Wal-Mart Stores, Inc.*, No. 11-1917, 2013 WL 3599156, *4 (7th Cir. July 16, 2013).  On July 29, 2013, plaintiffs filed a notice of appeal.  Doc. 91.

## ISSUES PRESENTED FOR REVIEW

1.     Plaintiffs filed a complaint alleging that the Illinois public-carry regime operated as a blanket prohibition on their Second Amendment right to carry a ready-to-use handgun in public for self-defense.

a.     Did plaintiffs' complaint become moot, and thus the district court lose subject matter jurisdiction, when the Illinois General Assembly enacted the Firearm Concealed Carry Act, 430 ILCS 66/1, *et seq.*; P.A. 98-0063, 98th G.A. (Ill. 2013), which went into immediate effect on July 9, 2013?

b.     If plaintiffs' only remaining challenges are to the 180-day implementation and 90-day review periods in the new Act, must they file a new complaint challenging that Act?

2.     If the current case is not moot, should defendants have the opportunity to present evidence demonstrating why the Act's implementation and review periods are constitutional?

## STATEMENT OF THE CASE

This appeal concerns the district court's dismissal of plaintiffs' complaint as moot following the Illinois General Assembly's passage of a new law enabling qualified individuals to carry concealed firearms in public, ending the State's longtime ban on carrying ready-to-use firearms in public. On the same day that the General Assembly enacted the new law, this Court issued its mandate in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), *reh'g denied*, 708 F.3d 901 (2013). Also that day, defendants moved to dismiss the complaint as moot because the new legislation provided all the relief that plaintiffs sought in their complaint, eliminating any case or controversy. The district court granted that motion, and plaintiffs appealed. Plaintiffs also filed an emergency motion in this Court seeking an injunction pending appeal, which the Court denied. Expedited briefing followed.

## STATEMENT OF FACTS

**This Court Invalidates Illinois' Prior Public-Carry Regime.**

Plaintiffs filed a complaint under 42 U.S.C. § 1983 alleging that subsections 720 ILCS 5/24-1(a)(4) & (10) (2010) and 720 ILCS 5/24-1.6 (2010), which prohibited most people from carrying loaded handguns for self-defense in public, violated plaintiffs' Second Amendment rights. Doc. 2. They sought declaratory and injunctive relief. *Id.* After the district court granted defendants' motion to dismiss for failure to state a claim, Doc. 57, this Court reversed, holding that the challenged subsections violated the Second Amendment, *see Moore*, 702 F.3d at 942. The Court concluded that the Second Amendment includes a right to carry a handgun for self-defense outside the home. *Id.* at 935-36, 942. Against that right, the Court reasoned, defendants could not establish that the public safety of Illinois residents justified the State's "uniquely sweeping ban" and "blanket prohibition" on the public carrying of handguns. *Id.*; *see also id.* at 940. The Court held "that a proper balance between the interest in self-defense and the dangers created by carrying guns in public is to limit the right to carry a gun to responsible persons rather than to ban public carriage altogether, as Illinois with its meager exceptions comes close to doing." *Id.* at 940.

The Court thus reversed the district court and remanded the case "for the entry of declarations of unconstitutionality and permanent injunctions." *Id.* at 942. The Court stayed its mandate for 180 days, until June 9, 2013, to allow the Illinois

General Assembly to "craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment . . . on the carrying of guns in public." *Id.* On defendants' motion, the Court later extended that period for by additional 30 days. *Moore*, App. Doc. 76.

**The Illinois General Assembly Enacts The Firearms Concealed Carry Act.**

Beginning in January 2013 — even before this Court denied defendants' petition for rehearing en banc on February 22, 2013, *see* 708 F.3d 901 (7th Cir. 2013) — the General Assembly introduced numerous bills in an effort to pass a new, public carry law. These included HB 997 (January), HB 1155 (February), HB 1157 (March), HB 2831 (March), and SB 2193 (May).[1] During this period, the General Assembly also heard testimony from interested parties, including the Illinois State Police, the National Rifle Association, the Illinois State Rifle Association (a plaintiff here), the City of Chicago, the Chicago Police Department, Cook County, the Chicago Transit Authority, the Regional Transportation Authority, and the Illinois Restaurant Association.[2]

---

[1] The bills described in this statement of facts are available at http://ilga.gov/legislation (last visited August 8, 2013).

[2] *Expanding Gun Safety Laws and Unlawful Use of Weapon: Hearing before the Ill. H. Comm. on Judiciary, 19 February 2013*; 98th General Assembly (Ill. 2013), notice *available at* http://my.ilga.gov (last visited August 9, 2013); *Expanding Gun Safety Laws and Unlawful Use of Weapon: Hearing before the Ill. H. Comm. on Judiciary, 22 February 2013*; 98th General Assembly (Ill. 2013); notice *available at* http://my.ilga.gov (last viewed August 9, 2013).

On May 31, 2013, after the introduction and consideration of HB 183 and SB 2193, both Houses of the Illinois General Assembly passed the Firearms Concealed Carry Act ("the Act"), 430 ILCS 66/1, *et seq.*; P.A. 98-0063, 98th G.A. (Ill. 2013),[3] to regulate the carrying of firearms in public.  The Act requires the State Police to "issue a license to carry a concealed firearm" to any applicant who satisfies the statutory requirements, and gives the State Police no more than 180 days after the effective date of the Act (*i.e.*, by January 5, 2014) to implement a comprehensive new licensing scheme and make license applications available.  430 ILCS 66/10(a), 10(d) (2013) ("The Department shall make applications for a license available no later than 180 days after the effective date of this Act.").  The Act further instructs the State Police to issue licenses within 90 days to any applicant who completes the requirements and submits their materials, information, and fees.  430 ILCS 66/10(e) (2013).  And the Act provides that the subsections of the Illinois Criminal Code that make it a felony to carry handguns in public no longer apply to valid license holders.  720 ILCS 5/24-1.6(a)(3)(A-5) & (B-5), 24-1(a)(4) and 24-1(a)(10); 720 ILCS 5/24-1.6 (2013).

Applicants must hold a valid Firearm Owner's Identification ("FOID") card as a predicate to receiving a license.  430 ILCS 66/25(2) (2013).  They also must agree to waive "privacy and confidentiality rights and privileges" under federal and state laws, facilitating the State Police's access to records.  430 ILCS 66/30(b)(3) (2013).

---

[3] *See* http://ilga.gov/statutes (last visited August 6, 2013).

The State Police must conduct background checks to determine whether applicants have a criminal history or mental health disabilities. 430 ILCS 66/35 (2013). Among other things, the State Police must ensure that, within the previous five years, applicants have not had two or more violations related to driving under the influence of alcohol or intoxicating drugs, and that they are not subject to pending arrest warrants or prosecution. 430 ILCS 66/25(3), (4) (2013). Applicants also must provide a full set of fingerprints (or wait an additional 30 days for any application lacking fingerprints), 430 ILCS 66/30(b)(8) (2013), and furnish current, head-and-shoulder-sized photographs, 430 ILCS 66/30(b)(9) (2013).

To process this information, the State Police must establish and maintain a database of license applicants and licensees. 430 ILCS 66/10(i) (2013). The data also must be made available to federal, state, and local law enforcement agencies, which may access the database on a regular basis and object to any person deemed a danger. *See id.*; 430 ILCS 66/15(a) (2013). An appointed review board is authorized to resolve such objections. 430 ILCS 66/20, 66/87 (2013). Further, individuals who are not already licensed in another jurisdiction generally must complete 16 hours of firearms safety training with instructors approved by State Police before applying for a license. 430 ILCS 66/25 (2013); 430 ILCS 66/75(a), (g), and (i) (2013). The State Police must track this training information, too. 430 ILCS 66/10(i) (2013).

Applicants who possess valid licenses from other States or territories with "substantially similar" licensing regimes may apply for and obtain an Illinois

license with proper documentation.  430 ILCS 66/40 (2013).  Non-residents may,

however, carry handguns in their vehicles even without applying for a non-resident

license.  430 ILCS 66/40(e) (2013).  Further, the Act establishes that "regulation,

licensing, possession, registration, and transportation of handguns and ammunition

for handguns by licensees" shall be uniform across Illinois, regulated exclusively by

the State, rather than local entities.  430 ILCS 66/90 (2013).  Municipalities,

however, were authorized to enact "greater restrictions or limitations on the

acquisition, possession and transfer of firearms than are imposed" by the Act,

including local rules restricting the possession or ownership of assault weapons,

provided that the local governments took such action within 10 days of the Act's

passage.  430 ILCS 65/13.1(a), (c) (2013).

On July 2, 2013, Governor Quinn used an amendatory veto to modify the Act,

which the General Assembly voted to override on July 9, 2013.[4]  The Act became

law that day.  *Id.*

**The District Court Dismisses The Case As Moot.**

On July 9, 2013, this Court issued its mandate.  *Moore*, App. Doc. 78.  That

same day, defendants filed a motion to dismiss the complaint as moot.  Pl. App.

Exh. E.[5]  The next day, plaintiffs filed a motion seeking a "Declaration of

Unconstitutionality and Preliminary and/or Permanent Injunction," *id.* at Exh. G,

---

[4] *See* http://ilga.gov/legislation (last visited August 6, 2013).

[5] Also that day, defendants filed a similar motion in the case of *Moore v. Madigan*, No. 11 C 3134 (C.D. Ill.).  That motion remains pending.

and other relief, *id.* at Exh. H.  After ordering further briefing limited to whether

(1) passage of the Act mooted the complaint, and (2) any constitutional challenges

must be raised in a new, separate lawsuit, *id.* at Exh. J, the district court granted

defendants' motion to dismiss on July 26, 2013, *id.* at Exh. A.

The district court held that the new Act superseded subsections 720 ILCS

5/24-1(a)(4), (a)(10) and 5/24-1.6 (2010), and passage of the Act therefore "rendered

moot" plaintiffs' complaint.  Pl. App. Exh. A, at 10.  The court explained that

mootness occurs when legislative acts cause the "'repeal, expiration, or significant

amendment to challenged legislation,'" obviating any need for injunctive relief from

the prior version of the law.  *Id.* at 6 (quoting *Fed'n of Advertising Industry Reps.,*

*Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003)).  And that was "the very

case presented" in this matter because the new Act resulted in a "significant[]"

amendment to the prior law.  Pl. App. Exh. A, at 7.  Indeed, there is no longer "a per

se ban on the concealed carry of a weapon," the court reasoned.  *Id.*  Instead, eligible

Illinois residents may receive licenses to carry concealed firearms in public.  *Id.*

The court rejected plaintiffs' contention that the Act is not moot because it

provides for a system, to be administered by the State Police, for ensuring that all

concealed-carry license holders are qualified to safely carry ready-to-use firearms in

public.  *Id.*  The Act gives plaintiffs "what they sought in the lawsuit," the court

continued, for plaintiffs now have a process to obtain a concealed-carry license.  *Id.*

at 8-9.  That process is consistent with this Court's determination that the Illinois

General Assembly should devise "'reasonable limitations, consistent with [the] public safety.'" *Id.* at 10 (quoting *Moore*, 702 F.3d at 942). As the district court explained, *Moore* did not require the General Assembly to pass a new law *and* develop, implement, and carry out a licensing process for all plaintiffs and the public at large by July 9, 2013. *Id.* at 10. Nor must plaintiffs necessarily wait 270 days to obtain a license because the outer deadlines of 180 and 90 days are "one-time events" that might not "*actually* [even] take that amount of time." *Id.* at 9 (emphasis in original). Finally, the court held that any challenges to these time frames "*must* be considered in a new lawsuit" and supported by relevant evidence. *Id.* (emphasis in original).

On July 29, 2013, plaintiffs filed a notice of appeal. Doc. 91. Plaintiffs also filed an emergency motion in this Court seeking an injunction pending appeal, and the Court denied that motion on August 1, 2013, ordering defendants to file this responsive brief. App. Doc. 8.

## SUMMARY OF ARGUMENT

The district court properly granted defendants' motion to dismiss this case as moot. Plaintiffs' complaint alleges that three subsections of Illinois law violated the Second Amendment because the challenged provisions completely banned plaintiffs from carrying ready-to-use handguns in public. Illinois' new Act allows residents to apply for a license to carry a concealed handgun in public. Plaintiffs' suit is moot because it challenges a law that no longer exists, and because the Act eliminates the complete ban that was the sole subject of plaintiffs' complaint.

Plaintiffs argue that the new law's 180-day implementation period and 90-day review period are a mere continuation of the old law, and thus the original complaint is not moot. But that argument necessarily challenges aspects of the new law that were not (and could not have been) part of the original complaint. Plaintiffs must file a new complaint challenging the new Act's implementation and review periods to create a live case or controversy, at which point defendants would have an opportunity to build a record demonstrating why the new Act's implementation and review periods are constitutional.

In the alternative, even if this Court holds that there is a live case or controversy arising out of the complaint, plaintiffs are not entitled to an immediate injunction. Instead, defendants should have an opportunity to demonstrate, through witness testimony and other evidence, why those provisions are "reasonable limitations, consistent with the public safety and the Second Amendment," as this Court prescribed. *Moore*, 702 F.3d at 942.

**ARGUMENT**

I.   **This Case Is Moot Because Plaintiffs Received Everything They Sought In Their Original Complaint, And Plaintiffs' Challenges To The New Act's Implementation And Application Review Periods Must Be Raised In A New Complaint.**

Plaintiffs' complaint contests only what this Court described as Illinois' "blanket prohibition" on carrying a firearm in public.  *Moore*, 702 F.3d at 940. Plaintiffs' complaint does not challenge the need for a licensing process to ensure that only properly qualified gun owners have the right to carry in public, that state officials need time to implement Illinois' first-ever public-carry licensing regime, and that some additional time will be needed to process each application.  In short, plaintiffs do not, and cannot, contend that their complaint challenges any aspect of the new law, as they must to avoid mootness.  Instead, without ever saying so directly, their theory is that — regardless of what they alleged in their complaint — this Court's decision to stay its mandate "to allow the Illinois legislature to craft a new gun law," *Moore*, 702 F.3d at 942, immunizes this case from the normal operation of mootness principles.  See Pl. Br. 11, 12, 13, 16, 17.  That theory not only upends well-established mootness doctrine, which compares changes in a challenged law to allegations in the *complaint*, but it reads too much into a single phrase from this Court's prior opinion.

### A.     Standard of Review

This Court reviews the district court's decision to dismiss a case based on lack of subject matter jurisdiction de novo.  *See Nick's Cigarette City, Inc. v. United States*, 431 F.3d 516, 520 (7th Cir. 2008).

### B.     Plaintiffs' Original Complaint Is Moot.

"[R]epeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief[.]"  *Fed'n of Advertising Indus. Representatives*, 326 F.3d at 930.  "[A]ny dispute over the constitutionality of a statute becomes moot if a new statute is enacted in its place during the pendency of the litigation, and the plaintiff seeks only prospective relief."  *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008); *see also Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995).  And the standard for determining whether a new statute moots a challenge to a prior law is firmly established:  If the effect of the new statute is that the law has been "sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided," the case is moot.  *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993).  These well-established principles demonstrate that the new Act moots plaintiffs' challenge to Illinois' ban on carrying firearms in public.

Plaintiffs brought suit seeking to have the "blanket prohibition on carrying [a] gun in public" imposed by the pre-amendment versions of 720 ILCS 5/24-1(a)(4)

-12-

& (10) (2010) and 720 ILCS 5/24-1.6 (2010) declared unconstitutional and enjoined. *Moore*, 702 F.3d at 940. But the new Act, which went into effect on July 9, 2013, 430 ILCS 66/1 (2013) *et seq.*, eliminates the blanket prohibition on carrying firearms in public and thereby substantially altered Illinois law and removed any case or controversy over whether the prior ban was constitutional. Specifically, the Act adds subsection (a-5) to 720 ILCS 5/24-2 (2013), which stipulates that 720 ILCS 5/24-1(a)(4) & (10) (2010) — the subsections that plaintiffs challenged in their complaint — "do not apply to or affect any person carrying a concealed pistol, revolver, or handgun" so long as "the person has been issued a currently valid license under the [Act] at the time of the commission of the offense." P.A. 98-0063 § 155. Likewise, the Act adds subsections (A-5) and (B-5) to 720 ILCS 5/24-1.6(3), which also create an exception to the criminal public-carry prohibition for those who have "been issued a currently valid license under the [Act]." P.A. 98-0063 § 155. Put simply, any Illinois resident who obtains a concealed-carry license under the Act may carry a handgun in public for purposes of self-defense. Accordingly, plaintiffs' request to enjoin enforcement of the old statutory regime is moot.

The Supreme Court's decision in *United States Department of Treasury, Bureau of Alcohol, Tobacco, & Firearms v. Galioto*, 477 U.S. 556 (1986), is instructive. There, the Court held that a constitutional challenge by a former psychiatric patient to a federal law precluding such former patients from obtaining a firearm became moot while the case was on appeal because Congress had created an administrative mechanism for former patients to challenge their restrictions on

a case-by-case basis. *Id.* at 559-60. The Court explained that because Congress did away with the per se ban the plaintiff had challenged in his complaint and replaced it with a mechanism that could allow him to obtain a firearm in the future, the plaintiff's constitutional arguments were no longer live. *Id.*

Plaintiffs' attempt to distinguish *Galioto* falls short. They argue that the case is inapposite because, there, the new law immediately benefitted the plaintiff. But plaintiffs here have never claimed that they are entitled to carry ready-to-use firearms in public without first satisfying certain minimal qualifications, such as applying for and receiving a license. As a practical matter, this includes some processing time (which the Act caps at 90 days) and some period for putting the entirely new, and comprehensive, licensing process in place (which the Act caps at 180 days). Like the new law in *Galioto*, which offered the plaintiff there a process for seeking to possess a firearm at some future date, *see* 477 U.S. at 559, Illinois' new Act provides a process by which plaintiffs may obtain a license to carry one in public. Like plaintiffs, Galioto did not obtain a right to possess a firearm immediately, yet his constitutional challenge was rendered moot. Indeed, if the General Assembly had opted to require the State Police to begin accepting applications immediately but permitted a 270-day period of review, plaintiffs would be in exactly the same situation as Galioto, and there is no doubt they would need to file a new complaint to challenge the reasonableness of that review period. The fact that the Act divides that period into a one-time, 180-day implementation period

-14-

and a 90-day application review period (both maximums) does not change the fact that plaintiffs are challenging a new law.

Nor is it relevant that in *Galioto* the new law did not moot all of the plaintiff's claims, as plaintiffs here appear to contend.  *See* Pl. Br. at 14.  What the Court remanded in *Galioto* were constitutional challenges to a *different* statute than the one passed upon by the district court and later amended by Congress.  *See Galioto v. Dep't of Treasury, Bur. of Alcohol, Tobacco, & Firearms*, 602 F. Supp. 682, 691 (D.N.J. 1985) (declaring portions of 18 U.S.C. § 921 *et seq.*, alone, to be unconstitutional); Br. of Appellant at 5 n.6, *Galioto*, 477 U.S. 556 (Observing that "[a]lthough appellee's complaint noted that he was subject to disabilities under Title VII [of the Gun Control Act of 1968] as well as under Title IV, the district court's opinion does not discuss Title VII and the court's order does not invalidate Title VII's disability provisions.  The court did not explain the reason for this omission.").  Here, the new law substantially amends the very law plaintiffs challenged by removing the blanket prohibition.

Plaintiffs' attempt to distinguish this case from *Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995), likewise fails.  In *Miller*, this Court dismissed as moot a constitutional challenge to a public school voucher program that excluded religious schools because, during the appeal, the legislature amended the program to make religious schools eligible.  *Id*. at 164.  The Court observed that the amendment gave the plaintiffs "exactly what they sought in this litigation," for they were no longer

"under the same burden that led to the suit." *Id.* As a factual matter, just as in

*Miller*, the burden that led to plaintiffs' suit here — the blanket prohibition — no

longer exists.

Plaintiffs also make an apparent effort to distinguish mootness cases where a

statute was repealed from cases where a statute was amended, *see* Pl. Br. at 13-14,

but so long as the amendment resulted in a substantial change in the law, this is a

distinction without a difference. While it is true that the primary case discussed by

the district court, *Federation of Advertising Industry Representatives*, involved an

ordinance that was repealed entirely, the reasoning of that case applies equally to

laws that were substantially changed by amendment. 326 F.3d at 930 ("In a string

of cases, the [Supreme] Court has upheld the general rule that repeal, expiration, or

significant amendment to challenged legislation ends the ongoing controversy and

renders moot a plaintiff's request for injunctive relief.") (citing, *inter alia*, *Lewis v.*

*Cont'l Bank Corp.*, 494 U.S. 472, 474 (1990); *Massachusetts v. Oakes*, 491 U.S. 576,

582-83 (1989); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982)). The district

court thus correctly applied settled law: barring some exception such as voluntary

cessation, an argument that plaintiffs asserted below but no longer press on appeal,

plaintiffs' original complaint challenging the old statutory regime is moot.

And plaintiffs are wrong to characterize the Act as "a further stay of the

Court's mandate." Pl. Br. at 11. This is no continuation of prior law. The timing

provisions that plaintiffs challenge are part of a comprehensive statutory scheme

-16-

that replaces the blanket prohibition on carrying a firearm in public with "a new gun law that . . . impose(s) reasonable limitations, consistent with the public safety and the Second Amendment," precisely as this Court prescribed. *Moore*, 702 F.3d at 942. And that new law is already in effect: the timing provisions are now one month old, 430 ILCS 66/10(a)&(d) (2013), the ten-day home rule deadline to pass assault weapons bans has expired, 430 ILCS 65/13.1(c) (2013), and non-residents who may lawfully carry a concealed weapon in their home State may now carry in their vehicle in Illinois, 430 ILCS 66/40(e) (2013). The new Act has not simply extended the old law; rather, it has substantially changed the Illinois statutory scheme and given plaintiffs what they sought — elimination of the blanket prohibition on carrying firearms in public.

    To avoid mootness, plaintiffs would have to recast their original complaint as a challenge, not to a blanket prohibition on carrying a handgun in public for self-defense, but to any regulation of public firearm possession whatsoever. Of course, plaintiffs never raised — and this Court's precedent and the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 592, 628 (2008), would preclude — such a position. *See Moore*, 702 F.3d at 942 (delaying issuance of mandate "to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations"); *Ezell v. City of Chicago*, 651 F.3d 684, 714 (7th Cir. 2011) (legislature may impose reasonable "time, place and manner restrictions" on Second Amendment rights); *see also Heller*, 554 U.S. at 626-27 ("Like most rights, the right secured by the Second Amendment is not unlimited."). A challenge now to the

specific contours of the new regime, including its 180-day implementation and 90-day review periods, has no place in an action premised upon the unconstitutionality of a prior regime.  *See Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997) (constitutional challenge to campaign contribution limits mooted by statute that increased limits where complaint did not allege that all contribution limits are unconstitutional); *see also Oakes*, 491 U.S. at 582-83 (challenge to child pornography statute mooted by amendment adding new intent element to challenged offense).

Finally, plaintiffs appear to argue that, their complaint aside, this Court's decision to stay its mandate "to allow the Illinois legislature to craft a new gun law," *Moore*, 702 F.3d at 942, operates as an exception to the mootness doctrine by compelling defendants to allow plaintiffs to carry ready-to-use firearms immediately after the mandate issued, regardless of what the General Assembly did.  *See* Pl. Br. 11, 12, 13, 16, 17.  But the Court stayed its mandate to give the General Assembly time to "craft" a new law, not to pass a law, implement a new licensing scheme, evaluate all 27,000 claimed members of the ISRA, and issue each qualified member a license.  And not only does plaintiffs' reading add significantly to the language of this Court's opinion, but it assumes the Court decided more than it was asked to decide, for plaintiffs' complaint did not include a claim that the Second Amendment entitles them to a public-carry license within a fixed, constitutionally-determined period.  And once again, plaintiffs ignore that established mootness doctrine

-18-

compares changes in a challenged law to allegations in the *complaint*, *see, e.g.*, *ADT Sec. Services, Inc. v. Lisle-Woodridge Fire Protection Dist.*, Nos. 12-2925, 12-2981, 2013 WL 3927716, at *9 (7th Cir. July 31, 2013) (case not moot because harm alleged in complaint remained in new ordinance), and plaintiffs' complaint challenges a blanket ban on all public carry that no longer exists.

Indeed, even if the General Assembly enacted the new Act *after* the district court enjoined the old law, the case would have become moot as soon as the new law became effective.  And the injunction then would have been dissolved.  *See, e.g.*, *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1248-49 (10th Cir. 2009) (vacating preliminary injunction because law was repealed after injunction was entered). Thus, the fact that this Court's mandate issued on the morning of July 9, 2013, and the General Assembly did not override the Governor's amendatory veto until later that afternoon, is immaterial.

In short, the statutory scheme that imposed a blanket prohibition on carrying a loaded firearm in public, the sole focus of plaintiffs' complaint, no longer exists. Instead, Illinois has adopted a system requiring a license to carry a loaded firearm in public, and that new statutory scheme is now in effect, with immediate practical results.  430 ILCS 66/1, *et seq.* (2013); P.A. 98-0063 § 999; *see supra* p. 18-19 (describing Act's immediate effect on Illinois home rule jurisdiction and non-residents).  Whether any part of the new regime — including the up-to-180-day implementation period and up-to-90-day review period — violates the Second

Amendment presents a separate question.  Because plaintiffs are no longer subject

to the categorical bar they challenged in their pleading below, the case is moot and

the district court properly dismissed the complaint.

### C.     Any Challenge To The Implementation And Review Periods Must Be Raised In A New Complaint.

Plaintiffs make clear that their only remaining objection is to the new Act's

180-day implementation and 90-day review periods.  Such a challenge must appear

in a new complaint, which would allow the parties to litigate the constitutionality of

those aspects of the new law.  At this point, without offering any theory as to why

the implementation and review periods are themselves unconstitutional, plaintiffs

not only ask this Court to exercise federal jurisdiction where there is none, but to

hold that the Second Amendment compels the instantaneous issuance of a

public-carry license.  A new complaint would allow the parties to develop a record

detailing why these periods are "reasonable limitations, consistent with the public

safety and the Second Amendment."  *Moore*, 702 F.3d at 942.

Where, as here, the law that a plaintiff challenges has been substantially

altered, the plaintiff must file a new complaint, either in a new lawsuit or with

leave to file in the existing suit.  In *Lewis*, for example, a challenge to Florida

banking statutes became moot by amendments to the Bank Holding Company Act.

494 U.S. at 474.  The Supreme Court explained that in those circumstances the

general practice is to dismiss the case as moot, but that if the plaintiffs had some

"residual claim" related to the new law that was not previously raised they could

file a new or amended complaint.  *Id.* at 482 ("where the mootness is attributable to a change in the legal framework," and "where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously," the Court would "remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully").  This Court has also indicated that any challenge to the new law should appear in a new complaint. *See Nat'l Rifle Ass'n v. City of Chicago,* 393 Fed. Appx. 390, at *1 (unpublished) ("Plaintiffs are entitled to pursue [challenges to new ordinances] in new suits"); *see also Nat'l Rifle Ass'n v. City of Chicago*, 646 F.3d 992, 993 (7th Cir. 2011) (explaining that in its unpublished order it had found case to be moot, and new challenges to new ordinances were being litigated in new suits).  And other circuits follow the same rule.  *See, e.g.*, *Stout*, 562 F.3d at 1249 ("But, if the plaintiffs wish to challenge the new canons, they must file a new complaint."); *Coleman v. Lyng*, 864 F.2d 604, 610 n.5 (8th Cir. 1988) ("The farmers can always challenge any shortcomings in the FmHA's new regulations and notice forms by filing a new lawsuit.").

Accordingly, plaintiffs are not foreclosed from challenging the implementation and review periods, or any other aspect of the Act, but they must do so in a new complaint.

**II.    In The Alternative, This Court Should Remand To Allow Defendants To Present Evidence Establishing That The New Act's Implementation And Review Periods Are Constitutional.**

In the event the Court were to hold that this case is not moot, plaintiffs still are not entitled to immediate relief.  Rather, defendants should have an opportunity to present evidence to demonstrate the reasonableness of the implementation and review periods.  The presence of ready-to-use firearms creates greater public safety risks in public than on private property, for an insufficiently qualified civilian, even if well-intentioned, may cause serious harm if he or she discharges a firearm in public, especially if the situation is fluid or dangerous, or crowds are present.  Accordingly, the Act requires that concealed carry license applicants meet specified criteria, authorizes the State Police to undertake background checks to confirm that these criteria are satisfied, and puts into place a process for law enforcement officials to object, based on cause, to an individual applicant's qualifications.  430 ILCS 66/15, 66/25, 66/35 (2013).  Plaintiffs do not dispute that these provisions are "reasonable limitations, consistent with the public safety and the Second Amendment," on the public carrying of firearms.  *Moore*, 702 F.3d at 932.  Instead, plaintiffs challenge the Act's 180-day implementation period, and the 90-day review period the Act affords the State Police to act on each application.  Again, therefore, should this Court hold that this case is not moot, it should remand to the district court for defendants to present evidence demonstrating that these periods are constitutional.

The Act requires the State Police to conduct an investigation of each applicant, including a background check for federal, state, and local criminal history; restraining and protective orders; and mental health and developmental disabilities.  430 ILCS 66/35 (2013).  The Act also enhances and clarifies mental health reporting directives, requiring specified persons and entities to report individuals who are ineligible for a concealed carry license due to a mental or developmental disability and adding specific definitions to make it easier for mandated reporters to identify these individuals.  405 ILCS 5/6-103.1, 6-103.2, 6-103.3 (2013); 430 ILCS 65/1.1 (2013).  And the Act requires the State Police to maintain a database of license applicants and licensees, and affords law enforcement agencies an opportunity to object to any applicant within 30 days after the State Police enter an applicant into the database.  430 ILCS 66/10(i), 66/15(a) (2013).

The Act also recognizes that it will take time for the State Police to modernize the existing FOID card system and otherwise implement procedures necessary to perform their new responsibilities consistent with public safety.  At legislative hearings preceding the Act, the State Police's spokesperson explained that a reasonable implementation period (as well as quick approvals for hiring and procurement and adequate start-up funding) was needed to ensure that the State Police have the personnel and technology to perform the required background

checks and maintain a secure, comprehensive database.[6]  This was particularly true, the State Police spokesperson explained, because the State Police anticipated that applications for FOID cards (a predicate to a concealed carry license, *see* 430 ILCS 66/25(2) (2013)) would increase substantially, placing pressures on the FOID card system, which was already stretched thin and required data system modernization.[7]  Moreover, while progress had been made toward rectifying deficiencies identified by an April 2012 Illinois Auditor General report in the reporting of individuals with potentially disqualifying mental health conditions,[8] the implementation period was necessary to ensure comprehensive mental health

---

[6]  *See* http://new.livestream.com/blueroomstream/events/1862841  at 01:54:25 (testimony of Lieutenant Darrin Clark before House Judiciary Committee on February 19, 2013); http://new.livestream.com/blueroomstream/events/1901953  at 2:50; 4:00 (Clark testimony before House Judiciary Committee on February 28, 2013).

[7]  *See* http://new.livestream.com/blueroomstream/events/1862841  at 01:54:41 (Clark testimony before House Judiciary Committee on February 19, 2013); http://new.livestream.com/blueroomstream/events/1901953  at 16:35 (Clark testimony before House Judiciary Committee on February 28, 2013).  Indeed, the State Police spokesperson explained that the State Police are now receiving over 60,000 FOID applications per month in anticipation of the availability of concealed carry licenses.  *See* http://new.livestream.com/blueroomstream/events/1862841  at 17:54; 01:54:41 (Clark testimony Clark before House Judiciary Committee on February 19, 2013); http://new.livestream.com/blueroomstream/events/1901953  at 28:51 (Clark testimony before House Judiciary Committee on February 28, 2013).

[8] *Mgmt. Audit of Dep't of State Police's Admin. of Firearm Owner's Identification Act*, Office of Auditor General (Apr. 2012), at Ch. 1 pp. 2-3, Ch. 2 pp. 20-34, *available at* http://www.auditor.illinois.gov/ (last visited August 8, 2013).

reporting.[9]  Echoing these concerns, the Act's sponsor described the State's pre-Act mental health reporting system as a "travesty" that was inadequate to exclude unqualified individuals.[10]  On remand, defendants would present evidence supporting each of these points.

Moreover, unlike the FOID card criteria, the Act requires that applicants complete a required level of firearms safety training.  430 ILCS 66/25 (2013).  The implementation period thus is necessary for the additional reason that the State Police need time to identify and approve firearms safety courses and instructors qualified to teach these courses, as the Act requires.  430 ILCS 66/75(a), 66/80 (2013).  The Act's sponsor explained that the Act requires each applicant to complete 16 hours of training, including range training, because most Illinois residents lack prior experience with carrying ready-to-use firearms in public.[11]  And the State Police's spokesperson stated that, based on current staffing levels, the

---

[9]  *See* http://new.livestream.com/blueroomstream/events/1901953  at 10:03 (Clark testimony before House Judiciary Committee on February 28, 2013).

[10]  *See* http://new.livestream.com/blueroomstream/events/2123427  at 1:30 (Rep. Phelps statement before House Judiciary Committee on May 23, 2013); http://new.livestream.com/blueroomstream/events/2122784  at 55:51 (Rep. Phelps statement at May 24, 2013 House Debate); http://new.livestream.com/blueroomstream/events/2135929  at 2:00:33 (Rep. Phelps statement before Senate Executive Committee on May 28, 2013).

[11]  *See* http://new.livestream.com/blueroomstream/events/2123427  at 2:38 (Rep. Phelps statement before House Judiciary Committee on May 23, 2013); http://new.livestream.com/blueroomstream/events/2135929  at 2:00:55 (Rep. Phelps statement before Senate Executive Committee on May 28, 2013).

State Police need time to review and approve training curriculum.[12]  The Act thus affords the State Police 60 days from the Act's effective date to begin approving firearms training courses and instructors (enabling potential applicants to obtain training before applications are even available).  430 ILCS 66/75(a), 66/80(a) (2013).

The Act also creates a 90-day review period during which the State Police must enter each applicant's information into a secure database, and any law enforcement agency (within 30 days of entry) may object based on cause to believe that the applicant "is a danger to himself or herself or others" (and the State Police must object to applicants with a significant arrest history).  430 ILCS 66/10(i), 66/15 (2013).  The Act further creates a Concealed Carry Licensing Review Board to resolve these objections (subject to judicial review), and requires the Board to resolve most objections within 30 days.  430 ILCS 66/20, 66/87 (2013).  The Act's implementation period gives time for the Illinois Governor to appoint, and the Illinois Senate to confirm, the Board's seven commissioners (who will include former federal judges and former officials from the United States Department of Justice, Drug Enforcement Administration, Department of Homeland Security, or Federal Bureau of Investigation, as well as a member of the mental healthcare community), as well as for the Board to adopt rules for conducting hearings.  430 ILCS 66/20(a), (d) (2013).  The Act's sponsor explained that these provisions ensure that the State Police issue concealed carry licenses only to qualified applicants, and

_____

[12]  *See* http://new.livestream.com/blueroomstream/events/2123427  at 14:50 (Clark statement before House Judiciary Committee on May 23, 2013).

that licenses are not arbitrarily denied.[13]  On remand, defendants would present evidence that these provisions are a reasonable means of preserving the public safety, while at the same time protecting the Second Amendment rights of law-abiding gun owners.

The Act's implementation period also gives the State Police time to adopt rules to implement its provisions, 430 ILCS 66/95(b) (2013), including rules for the availability and submission of applications, 430 ILCS 66/10(d) (2013); allowing for non-resident license applications, 430 ILCS 66/40(b) (2013); and for standardized signs stating that the carrying of firearms is prohibited in certain places, 430 ILCS 66/65(d) (2013).  On remand, defendants would present evidence that the State Police currently are engaged in emergency rulemaking (as the Act allows, 430 ILCS 66/95(b) (2013)), and expect to adopt temporary rules on topics including signage, instructor approval, curriculum approval, applications, background investigations, licensing, revocations, and appeals that will be effective while permanent rules are promulgated.  *Compare* 5 ILCS 100/5-40 (2010) (general rulemaking), *with* 5 ILCS 100/5-45 (2010) (emergency rulemaking).

Defendants also would present evidence that the State Police and Illinois Department of Human Services have entered into contracts, on an emergency basis,

---

[13]  *See* http://new.livestream.com/blueroomstream/events/2123427 at 3:04 (Rep. Phelps statement before House Judiary Committee on May 23, 2013); http://new.livestream.com/blueroomstream/events/2122784 at 54:30 (Rep. Phelps statement at May 24, 2013 House Debate); http://new.livestream.com/blueroomstream/events/2135929 at 2:01:04 (Rep. Phelps statement before Senate Executive Committee on May 28, 2013).

to upgrade computer equipment to ensure compliance with the Act's requirements that the State Police maintain a secure, comprehensive database, that individuals with disqualifying mental conditions are reported, and that each applicant undergo a thorough background check.[14]  Again, plaintiffs do not dispute that these requirements are "reasonable limitations, consistent with the public safety and the Second Amendment," on the public carrying of firearms.  *Moore*, 702 F.3d at 932. And if this case were not moot (as it is), defendants would demonstrate on remand that the Act's 180-day implementation period and 90-day review period are likewise constitutional means of protecting the public.

In the end, plaintiffs' request for injunctive relief presumes that they (and plaintiff Illinois State Rifle Association counts 27,000 members) are qualified to safely carry loaded firearms in public, by virtue of their possession of a FOID card. But without individualized determinations that each plaintiff is qualified to carry firearms in public (where the risks associated with the discharge of firearms are far greater than on private property), plaintiffs' request raises significant public safety concerns.  Accordingly, if this Court were inclined to grant plaintiffs injunctive relief, each of the approximately 27,000 plaintiffs should be required to demonstrate to the district court that they should be allowed to carry concealed weapons in

---

[14] *See* "State Awards Contracts For Concealed Carry," (July 23, 2013), *available at* http://www.sj-r.com/breaking/x946755648/State-awards-contracts-for-concealed-carry.

public.  But the State Police, not a district court, is best positioned to make these

determinations.

## CONCLUSION

Defendants respectfully request that this Court affirm the district court's

judgment.

August 9, 2013                                    Respectfully submitted,


                                                 LISA MADIGAN
                                                 Attorney General of Illinois

                                                 MICHAEL A. SCODRO
                                                 Solicitor General

                                                 JANE ELINOR NOTZ
                                                 Deputy Solicitor General

                                                 EVAN SIEGEL
                                                 CLIFFORD W. BERLOW

                                                  /s/ Karl R. Triebel
                                                 KARL R. TRIEBEL

                                                 Assistant Attorneys General
                                                 100 West Randolph Street, 12th Floor
                                                 Chicago, Illinois 60601-3218
                                                 (312) 814-2391
                                                 *Attorneys for Defendants-Appellees*

## RULE 32(a)(7)(B) CERTIFICATION

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(I) in that it contains 7,166 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  In preparing this certificate, I relied on the word count of WordPerfect X4.

    /s/ Karl R. Triebel    

KARL R. TRIEBEL

**CERTIFICATE OF SERVICE**

I certify that on August 9, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Karl R. Triebel

KARL R. TRIEBEL
