No. 13-2661

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

MARY E. SHEPARD and the ILLINOIS STATE RIFLE ASSOCIATION,

*Plaintiffs-Appellants*,

v.

LISA M. MADIGAN, *et al.*,

*Defendants-Appellees*.

---

On Appeal from United States District Court
for the Southern District of Illinois
Civil Case No. 11-CV-405-WDS (Honorable William D. Stiehl)

---

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

---

William N. Howard
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0333
(312) 896-6433 (Fax)

Charles J. Cooper
David H. Thompson
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (Fax)

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................3

I.    THIS CASE IS NOT MOOT....................................................................3

II.   PLAINTIFFS ARE NOT CHALLENGING THE FCCA'S "IMPLEMENTATION AND REVIEW PERIODS."....................................................................11

III.  THERE IS NO NEED FOR A REMAND TO DETERMINE WHETHER THE "IMPLEMENTATION AND REVIEW PERIODS" ARE CONSTITUTIONAL................16

CONCLUSION ....................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                          **Page**

*ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, __ F.3d __,
    2013 WL 3927716 at *7 (7th Cir. July 31, 2013)................................9

*Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*,
    460 F.3d 717 (6th Cir. 2006) ...............................................10

*Charles v. Daley*, 749 F.2d 452 (7th Cir. 1984) ...................................3, 9

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ............5

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*,
    219 F.3d 1301 (11th Cir. 2000) ..........................................10

*Coleman v. Lyng*, 864 F.2d 604 (8th Cir. 1988)...............................14, 15

*Conservation Law Found. v. Evans*, 360 F.3d 21 (1st Cir. 2004) ..........10

*Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994)..................................10

*Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723 (7th Cir. 2001)...................3

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ................................2, 11, 20

*Galioto v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*,
    602 F. Supp. 682 (D.N.J. 1985), *vacated by Galioto*, 477 U.S. 556 ..................6

*Kansas Judicial Review v. Stout*, 562 F.3d 1240 (10th Cir. 2009)..........13

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990)................................15

*Los Angeles County v. Davis*, 440 U.S. 625 (1979) .................................3

*Massachusetts v. Oakes*, 491 U.S. 576 (1989).........................................15

*Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995) (per curiam)....................8

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) .........................2, 18, 22

*Nat'l Black Police Ass'n v. District of Columbia*,
    108 F.3d 346 (D.C. Cir. 1997).............................................12

*Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*,
    393 F. App'x 390 (7th Cir. 2010).........................................15

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993)................................................4, 5, 9

*Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257 (3d Cir. 2002)..................10

*Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057 (9th Cir. 2013) ...........................9, 10

*Rembert v. Sheahan*, 62 F.3d 937 (7th Cir. 1995) .....................................................9

*Schall v. Martin*, 467 U.S. 253 (1984).......................................................................9

*Selcke v. New England Ins. Co.*, 2 F.3d 790 (7th Cir. 1993)....................................21

*Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061 (8th Cir. 2004) ............................10

*U. S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*
     *v. Galioto*, 477 U.S. 556 (1986).......................................................................6, 7

*Zessar v. Keith*, 536 F.3d 788 (7th Cir. 2008) ..........................................................9

## **Statutes**

430 ILCS 66/10(d)-(e) ................................................................................................1

430 ILCS 66/40(e) ......................................................................................................4

430 ILCS 66/65 ...........................................................................................................2

720 ILCS 5/24-1(a)(4)&(10).....................................................................................23

720 ILCS 5/24-1.6(a)(3)(A)-(B) ...............................................................................23

720 ILCS 5/24-1.6(a)(3)(A-5), (B-5)..........................................................................1

720 ILCS 5/24-2(a-5).................................................................................................1

## **Other Authorities**

*Concealed Carry Act Frequently Asked Questions*, ISP,
     http://www.isp.state.il.us/firearms/ccw/ccw-faq.cfm .........................................20

## INTRODUCTION

The State's claim that this case is moot rests on the proposition that "plaintiffs are no longer subject to the categorical bar they challenged in their pleading below," State Br. 20—a claim the State repeats in various formulations throughout its brief. *See, e.g.*, *id.* at 10, 11, 13, 17, 19. But this is a bit like claiming that President Obama is no longer President because his second term is set to expire on January 20, 2017. In Illinois today, there is still no lawful avenue available for law-abiding residents to carry a firearm in public. To be sure, the laws Plaintiffs challenged making it illegal to carry a ready-to-use firearm in public now provide an exception for those who have "been issued a currently valid license under the Firearm Concealed Carry Act [("FCCA")] . . . ." 720 ILCS 5/24-2(a-5); 720 ILCS 5/24-1.6(a)(3)(A-5), (B-5). But presently there is no way for a citizen of Illinois to get a license: the FCCA gives the Illinois State Police ("ISP") 180 days from July 9, 2013 to make license applications available and an additional 90 days from when the first application is submitted to process it. *See* 430 ILCS 66/10(d)-(e). In the meantime, the law-abiding citizens of Illinois remain categorically prohibited from carrying a firearm in public to defend themselves—prohibited by the very laws that Plaintiffs challenged and that this Court invalidated.

Plaintiffs' appeal in this case does not quarrel with this Court's conclusion that there are "reasonable limitations" that Illinois may impose on carrying

firearms in public that are "consistent with . . . the Second Amendment . . . ."
*Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). Plaintiffs' appeal also does
not take issue with the limitations on carrying firearms that the FCCA will impose
once its licensing system is operational. *See, e.g.*, 430 ILCS 66/65. What
Plaintiffs *do* take issue with is the notion that Illinois, while it is putting this system
in place, *may continue to enforce the ban on carrying ready-to-use firearms in
public that this Court has already held unconstitutional and ordered enjoined*.
This amounts to an argument that the default position is that citizens *cannot*
exercise their Second Amendment rights unless the State has in place a system to
regulate such exercise. But that cannot be right—while the government may be
*permitted* to regulate the exercise of Second Amendment rights, it is not *required*
to do so, and absent permissible regulation citizens should be free to exercise their
fundamental Second Amendments rights. "It's hard to imagine anyone" advancing
an argument to the contrary in the context of "the exercise of a free-speech or
religious-liberty right," and "[t]hat sort of argument should be no less
unimaginable in the Second Amendment context." *Ezell v. City of Chicago*, 651
F.3d 684, 697 (7th Cir. 2011). Just as a state could not impose a ban on public
speaking and assemblies during the formation of a permitting regime, so too the
continuing blanket ban on carriage cannot stand.

2

# ARGUMENT

## I.    THIS CASE IS NOT MOOT.

1.    "A defendant carries a heavy burden when it argues that a plaintiff's claims are moot . . . ."  *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001); *see also Charles v. Daley*, 749 F.2d 452, 457 (7th Cir. 1984); *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (case may be mooted when, among other things, "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation").  And, as the State acknowledges, the test for determining whether new legislation moots a case is "firmly established:  If the effect of the new statute is that the law has been 'sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided,' the case is moot."  State Br. 12 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993) (hereinafter, "*Associated Gen. Contractors*")).

What the State fails to come to grips with, however, is that mere passage of the FCCA did not alter the law of Illinois *at all* with respect to the right of Illinois's law-abiding citizens to carry firearms in public:  they are still flatly prohibited from doing so until the FCCA's licensing system is operational.  Indeed, when seeking to identify the FCCA's "immediate practical results," the best the State can do is to refer to the "Act's immediate effect on Illinois home rule

jurisdiction and non-residents." *Id.* at 19.  Neither of these things, of course,

changes the fact that Illinois's residents remain flatly prohibited from carrying

firearms in public to defend themselves.  Indeed, the rights immediately conferred

on non-residents only add insult to the irreparable injury suffered by Illinois

residents like Ms. Shepard who are licensed to carry firearms in other states, for

now *non-residents* licensed to carry by their home states may lawfully carry

firearms in their cars, but similarly situated residents still cannot.  *See* 430 ILCS

66/40(e).

     *Associated Gen. Contractors*, the very case that the State cites for the

"firmly established" test for determining whether intervening legislation moots a

case, demonstrates that this case is *not* moot.  There, the plaintiffs challenged a

Jacksonville, Florida ordinance that set aside a certain amount of the money spent

on city contracts for "Minority Business Enterprises."  *Associated Gen.*

*Contractors*, 508 U.S. at 658.  After the Supreme Court granted certiorari to hear

the case, Jacksonville repealed the challenged ordinance and replaced it with a new

one.  The dissenting opinion outlined the changes effected by the new ordinance at

length:

>     The new ordinance clearly was written to remedy the
> constitutional defects that petitioner alleged and the District Court
> found in the original program. The new law was passed after
> completion of an independent study, which the city commissioned,
> and after a Select Committee of the Jacksonville City Council
> conducted numerous public hearings. The new ordinance expressly

4

adopts the select committee's findings concerning "the present effects of past discrimination" in city contracting.

   The city's effort to make the law more narrowly tailored also is evident. By its terms, the new program will expire in 10 years. In addition, as the Court explains, all but two of eight previously favored groups have been eliminated from the list of qualified participants; the participation goals vary according to the type of contract and the ownership of the contractor; and there are now five alternative methods for achieving the participation goals. Only one of the five methods for complying with the participation goals, the "Sheltered Market Plan," resembles the earlier set-aside law. It is unclear how the city will decide when, if ever, to use the Sheltered Market Plan, rather than an alternative method, for a particular project. As in *Fusari*, "we can only speculate how the new system might operate."

*Id.* at 674 (O'Connor, J., dissenting) (citations omitted).

The majority, however, held that these statutory changes did not moot the case, because the "gravamen of petitioner's complaint"—"that its members [were] disadvantaged in their efforts to obtain city contracts"—remained, even if the "new ordinance may disadvantage them to a lesser degree than the old one . . . ." *Id.* at 662. Indeed, comparing the situation to *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)—in which the Court held that the risk of the defendant reenacting a repealed ordinance saved the case from mootness—the Court held that *Associated Gen. Contractors* was "an *a fortiori* case. There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so." *Associated Gen. Contractors*, 508 U.S. at 662. The same is true here, for Illinois

persists in enforcing its unconstitutional ban on carrying firearms in public even while its licensing system is not yet operational.

2.     The State principally relies on two cases to support its argument that this case is moot, but neither helps its cause.  In the first, *United States Department of Treasury, Bureau of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S. 556 (1986), the plaintiff, a former mental patient, challenged on Fifth Amendment grounds federal laws treating former mental patients differently than former felons who had committed crimes not involving firearms.  Individuals in both groups were prohibited from purchasing firearms, but those in the latter group could apply for administrative relief from the prohibition, while those in the former group could not.  *See id.* at 557-58.  The court below held that this differential treatment violated both equal protection and substantive due process principles under the Fifth Amendment:

> The court does not mean to suggest by this opinion that all former sufferers of mental illness should be permitted to own firearms.  But, rather, if Congress has determined that there are circumstances under which former criminals can own and possess weapons and a means is provided to establish such entitlement, former mental patients are entitled to no less.

*Galioto v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 602 F. Supp. 682, 691 (D.N.J. 1985), *vacated by Galioto*, 477 U.S. 556.

After the case had been appealed and argued in the Supreme Court, Congress amended federal law by "striking out the language limiting the provision

[of possible relief] to certain felons and changing the statute to read that *any* person who 'is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition' may apply to the Secretary of the Treasury for relief" and, moreover, provided that this amendment to the law " 'shall be applicable to any action, petition, or appellate proceeding pending on the date of the enactment of this Act.' " *Galioto*, 477 U.S. at 559 (emphasis added).  "This enactment" obviously "significantly alter[ed] the posture of [the] case," for federal law no longer "singled out" former mental patients by applying an "irrebuttable presumption" that they were forever unfit to purchase firearms, and the Supreme Court held that the issues before it were moot.  *Id.*

As this description of *Galioto* should make clear, the fact that "Galioto did not obtain a right to possess a firearm immediately," State Br. 14, has no bearing on whether this case is moot.  *Galioto* was not a Second Amendment case, and once Congress enacted an immediately effective law providing former mental patients with an avenue for seeking relief from their firearms disabilities, the equal protection and due process issues raised by the case had no continuing practical significance.  Here, by contrast, Plaintiffs have claimed and this Court has agreed that there is a Second Amendment right to carry firearms in public, and, until Illinois's licensing system is operational, Plaintiffs are flatly prohibited from exercising that right.

7

The State's second case, *Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995) (per curiam), is likewise inapposite.  *Miller* was a free exercise case that also challenged differential treatment of the plaintiffs and others:  a Wisconsin "statute permitting some children in Milwaukee to attend nonsectarian private schools at public expense."  *Id*. at 164.  While the appeal to this Court was pending, "the state repealed the [challenged statute] and enacted a new version minus the word 'nonsectarian' in the description of covered private schools."  *Id*.  This Court held that the case was moot because "[t]he amendment [gave] plaintiffs exactly what they sought in [the] litigation—equal treatment of secular and sectarian private schools under the state's funding program."  *Id*.  Indeed, the plaintiffs in *Benson* did "*not* contend that the revision [left] them under the same burden that led to the suit."  *Id.* (emphasis added).  But this is precisely what Plaintiffs here *do* contend— *i.e.*, that they continue to have no means available to lawfully carry firearms in public to defend themselves.

3.      As explained above, the State repeatedly, and erroneously, insists that "plaintiffs are no longer subject to the categorical bar they challenged in their pleading below . . . ."  State Br. 20.  The State's insistence on this point is understandable, for its own authority establishes that "if the injury of which a plaintiff complains continues even under the amended statute, then the possible issuance of an injunction promises a measure of relief, and a court may act."

8

*Rembert v. Sheahan*, 62 F.3d 937, 941 (7th Cir. 1995).  *See also Zessar v. Keith*, 536 F.3d 788, 794 (7th Cir. 2008) ("[W]hen an intervening amendment provides no assurance that the complained-of conduct will cease, the case is not moot."). *See* State Br. 12 (citing *Rembert* and *Zessar*).  Here, issuance of an injunction certainly promises Plaintiffs "a measure of relief"—without one, they are not able to exercise their Second Amendment rights, potentially until April of next year— and this Court thus "may act" to provide this relief.

Such a holding would follow a host of precedent holding that an intervening change in law does not rid a court of jurisdiction to relieve plaintiffs of an injury that persists despite the change in law.  *See, e.g.*, *Associated Gen. Contractors*, 508 U.S. at 662 (case not moot when new ordinance "disadvantage[d] [plaintiffs] in the same fundamental way"); *Schall v. Martin*, 467 U.S. 253, 256 n.2 (1984) (case not moot when "new [law] contain[ed] a preventive detention section identical to former [law]"); *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, __ F.3d __, 2013 WL 3927716 at *7 (7th Cir. July 31, 2013) (case not moot when plaintiffs "would still face a variety of injuries stemming from the new ordinance"); *Charles*, 749 F.2d at 457 (case not moot because "State of Illinois could prosecute plaintiffs for violation of . . . section [of superseded statute] if plaintiffs violated that section while it remained in effect");  *Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1067 (9th Cir. 2013) (case not moot when "a dismissal for mootness would allow

[defendant] to continue to limit [plaintiff's] speech without further judicial review"); *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006) (case not moot when "amendments . . . did not completely remove the alleged harm"); *Conservation Law Found. v. Evans*, 360 F.3d 21, 25 (1st Cir. 2004) (case not moot when new regulation "designed merely to maintain the status quo until [agency] could complete a more comprehensive overhaul of its management measures" was "largely an extension" of prior regulation); *Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061, 1064 (8th Cir. 2004) (case not moot when amended law "appear[ed] to disadvantage [plaintiff] the same way it did before the . . . amendment"); *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 263 (3d Cir. 2002) (Alito, J.) (case not moot when, according to plaintiff, "both before and after the amendment, the ordinance effectively prohibited [plaintiff] from locating a [radio] tower in any viable location"); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir. 2000) (case not moot when it was "reasonable to expect that the alleged constitutional violations resulting from the enforcement of the provisions of the [old ordinance] validated by the district court will continue with the enforcement of the [new ordinance]"); *Cooper v. McBeath*, 11 F.3d 547, 551 (5th Cir. 1994) (case not moot when "practical effect" of amended law remained the same despite the fact that amendment "may lessen the burden placed on the Plaintiffs").

Indeed, the State's contention that the harm inflicted by Illinois's ban on carrying firearms in public has been substantially alleviated by the FCCA's promise that Plaintiffs will be able to apply for and potentially obtain a concealed carry permit in the future cannot be squared with this Court's decision in *Ezell*. In *Ezell*, this Court ordered that a City of Chicago ordinance banning firing ranges in the City be preliminarily enjoined. In doing so, it rejected the district court's holding that the plaintiffs could not demonstrate irreparable harm due to the "availability of firing ranges outside the city . . . ." *Ezell*, 651 F.3d at 697. If, as this Court held, it is "a profoundly mistaken assumption" that "the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction," *id.*, the same must be true of the assumption that the harm to a constitutional right is measured by the extent to which it can be exercised sometime in the future. In other words, if the ability to exercise a Second Amendment right in the next *town* does not mitigate the harm inflicted by a law prohibiting its exercise, then surely the ability to exercise a Second Amendment right in the next *year* does not do so either.

## II.  PLAINTIFFS ARE NOT CHALLENGING THE FCCA'S "IMPLEMENTATION AND REVIEW PERIODS."

1.     As the foregoing demonstrates, Illinois's ban on carrying firearms in public is alive and well, and Plaintiffs' challenge to that ban is not moot. The State attempts to recast Plaintiffs' arguments, alleging that we are really challenging "the

specific contours of the new regime, including its 180-day implementation and 90-day review periods."  State Br. 17-18.  Indeed, the State goes on for page after page in its attempt to defend "the reasonableness of the implementation and review periods."  *Id.* at 22; *see id.* at 22-29.

But this is all beside the point, for Plaintiffs are *not* challenging the length of the "implementation and review periods" or their reasonableness.  Rather, Plaintiffs are challenging *the continued enforcement of the flat ban on carrying ready-to-use firearms that this Court has already held unconstitutional.*  Illinois can take as long as it wants to implement its new concealed carry law; it just cannot continue to enforce its unconstitutional carry ban in the meantime.

2.     The State's authorities for the proposition that Plaintiffs must file a new complaint challenging the FCCA's implementation and review periods do not support the State's argument.  In *National Black Police Association v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997), the "plaintiffs [did] not contend that [the challenged campaign contribution] limits continue[d] to have any residual effect," the "plaintiffs [did not] suggest that the contribution limits enacted by the new legislation . . . [were] also unconstitutional," and, in sum, "passage of . . . new legislation ha[d] completely and irrevocably eradicated the effects of the alleged violation."  While it was thus clear that "declaratory and injunctive relief would no

longer be appropriate" in *National Black Police Association*, *id.*, that is not the case here.

In *Kansas Judicial Review v. Stout*, 562 F.3d 1240 (10th Cir. 2009), the Tenth Circuit held that Kansas's adoption of a new Code of Judicial Conduct mooted the plaintiffs' challenge to the old code. One of the challenged provisions had been "completely eliminated," leaving "no doubt" that the plaintiffs' challenge to it was moot, *id.* at 1246, and the remaining provisions at issue had been changed in a "fundamental" way, *id.* at 1247. The plaintiffs also argued that they could suffer "collateral consequences" if the case were found moot, but the court dismissed "plaintiffs' allegations of collateral consequences as so imbued with speculation and remoteness that they [could not] serve as a foundation for [its] circumspect jurisdictional inquiry." *Id.* at 1248. Given this state of affairs, the court unsurprisingly concluded that "if the plaintiffs wish to challenge the new canons, they must file a new complaint." *Id.* at 1249. But this conclusion has no relevance here, when the challenged laws continue to violate Plaintiffs' fundamental rights every day they remain in effect. Indeed, *Stout* explains that "[i]n deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world," and it is only "[w]hen it becomes impossible for a court to grant effective relief" that "a live controversy ceases to exist, and the case becomes moot." *Id.* at 1246

13

(alterations and quotation marks omitted).  Under this standard, this case is clearly not moot.

In *Coleman v. Lyng*, 864 F.2d 604 (8th Cir. 1988), a class of farmers who were borrowers from the Farmers Home Administration ("FmHA"), challenged certain FmHA loan servicing policies, *id.* at 605, including notice forms the FmHA sent to borrowers behind on their loan payments warning them of the potential for adverse action, *see id.* at 606-07.  The plaintiffs were partially successful in district court, and both sides appealed.  After the district court decided the case, however, Congress passed intervening legislation that the Eighth Circuit held mooted the case.  *Id.* at 605.  The State focuses on an aspect of the court's decision addressing the claims of a group of borrowers for whom the new "Act mandate[d] as much relief as the plaintiffs claim."  *Id.* at 610.  "The farmers' only argument against declaring the first group's claims moot [was] that, by vacating the District Court's orders, [the] Court would be denying the farmers the chance to challenge the FmHA's new notice forms to ensure compliance with" an injunction that the district court had entered.  *Id.* at 610 n.5.  The court, however, found that "[t]his concern [was] unwarranted" because the farmers could "always challenge any shortcomings in the FmHA's new regulations and notice forms by filing a new lawsuit."  *Id.*  Furthermore, the terms of the district court's injunction "would no longer be important in such a proceeding, since [the new] Act would provide a

14

more extensive and more concrete basis for any claim for relief on these grounds." *Id*.  This reasoning is inapplicable here, as Plaintiffs are not challenging any aspect of the new FCCA but rather the continuing effect of Illinois's ban on carrying firearms in public while Illinois works to put its new licensing system in place.

The State also cites *Massachusetts v. Oakes*, 491 U.S. 576 (1989); *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990); and *National Rifle Association of America, Inc. v. City of Chicago*, 393 F. App'x 390 (7th Cir. 2010), but we have already addressed those cases in our opening brief.  *See* Pls. Mot. for Inj. Pending Appeal ("Pls. Br.") 12-13, 15.  Indeed, the State's characterization of *Lewis* only underscores the fact that this case is not moot.  According to the State,

> "where the mootness is attributable to a change in the legal framework," and "where the plaintiff may have some residual claim *under the new framework* that was understandably *not asserted previously*," the Court would "remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully."

State Br. 21 (quoting *Lewis*, 494 U.S. at 482) (emphasis added).  Here, of course, Plaintiffs are not asserting a claim under the FCCA's new framework that was not asserted previously but rather are asserting the same claim that they have asserted all along:  that Illinois cannot flatly prohibit them from carrying firearms in public to defend themselves.

3.    The State also claims that "[t]o avoid mootness, plaintiffs would have to recast their original complaint as a challenge, not to a blanket prohibition on

15

carrying a handgun in public for self-defense, but to any regulation of public firearm possession whatsoever." State Br. 17. This is a curious argument given that the relief we have requested would "do nothing to upset [Illinois's] regime" of "generally requir[ing] law-abiding citizens to obtain a permit—a FOID card—to lawfully possess a gun, whether in public or private" and would not "upset the Illinois Legislature's determination regarding where a firearm may be carried in public" because "Plaintiffs are requesting a right to carry a firearm consistent with the limitations on such carriage set forth in Section 65 of the FCCA . . . ." Pls. Br. 18 (emphasis omitted). At any rate, to avoid mootness we need not recast our original complaint at all, for it is undisputed that Ms. Shepard, members of the Illinois State Rifle Association, and the other law-abiding citizens of Illinois continue to "face arrest, prosecution, and incarceration should they possess and carry a handgun in violation of the [challenged] Illinois statutes." Pls. Br. Exh. B, Compl., Doc. 2, ¶ 31.

## III.    THERE IS NO NEED FOR A REMAND TO DETERMINE WHETHER THE "IMPLEMENTATION AND REVIEW PERIODS" ARE CONSTITUTIONAL.

As an alternative to its mootness arguments, the State requests a remand to provide it with "an opportunity to present evidence to demonstrate the reasonableness of the implementation and review periods." State Br. 22. No such remand is necessary or appropriate, for Plaintiffs are entitled to relief now.

16

1.     To the extent the State claims that a remand is necessary to allow the district court to determine whether the length of time the FCCA provides for establishing an operational permitting process is reasonable, the State's argument is, as explained above, beside the point.  Plaintiffs are not seeking to hasten implementation of the FCCA but are rather seeking to prevent the State from continuing to enforce its unconstitutional ban on carrying firearms in public during the implementation period.

2.     To the extent the State claims a remand is necessary to allow the district court to consider whether the State can justify continuing to ban the law-abiding citizens of Illinois from carrying firearms in public during the implementation period, the State's argument is foreclosed by this Court's decision striking down the State's carry ban.  Indeed, in its brief to this Court the State argued that

> if this Court disagrees with defendants and holds both that the regulations fall within the scope of the Second Amendment and fail on the existing record under means-ends testing, the Court should remand to permit the district courts in the first instance to make the factual findings necessary to determine whether the State can demonstrate a sufficient fit between the challenged statutes [*i.e.*, the very statutes the State seeks to continue to enforce here] and their public-safety purpose.

Brief of Defs.-Appellees Lisa Madigan, Hiram Grau, Tyler R. Edmonds and Patrick J. Quinn at 52, Nos. 12-1269 & 12-1788 (7th Cir. May 9, 2012), ECF Nos. 23 & 22, respectively.  This Court, of course, flatly rejected the State's plea:

The usual consequence of reversing the dismissal of a suit (here a pair of suits) is to remand the case for evidentiary proceedings preparatory to the filing of motions for summary judgment and if those motions fail to an eventual trial. But there are no evidentiary issues in these two cases. The constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial. . . . The key legislative facts in this case are the effects of the Illinois law; *the state has failed to show that those effects are positive*.

We are disinclined to engage in another round of historical analysis to determine whether eighteenth-century America understood the Second Amendment to include a right to bear guns outside the home. The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside. The theoretical and empirical evidence (which overall is inconclusive) is consistent with concluding that a right to carry firearms in public may promote self-defense. *Illinois had to provide us with more than merely a rational basis for believing that its uniquely sweeping ban is justified by an increase in public safety. It has failed to meet this burden. The Supreme Court's interpretation of the Second Amendment therefore compels us to reverse the decisions in the two cases before us and remand them to their respective district courts for the entry of declarations of unconstitutionality and permanent injunctions.*

*Moore*, 702 F.3d at 942 (emphases added).

The State repeated its plea in its failed attempt to secure en banc reconsideration of this Court's decision. *See* Defs.-Appellees' Pet. for Reh'g En Banc at 13-14, Nos. 12-1269 & 12-1788 (7th Cir. Jan. 8, 2013), ECF No. 51 ("At a minimum, this Court should allow the State to defend its laws with an answer and presentation of evidence on remand to the district courts."). Thus, it is the law of this case and the law of this Circuit that the State simply cannot justify continuing

18

to flatly ban its law-abiding citizens from carrying firearms to defend themselves in public.

3.     At any rate, the State falls short in its attempt to demonstrate that public safety justifies its continued infringement of its citizens' constitutional rights.  As an initial matter, the FOID card process already provides the ISP with the opportunity to conduct a thorough background check of a citizen who seeks to lawfully own a firearm in Illinois, and it empowers the ISP to deny a citizen that right if he is a felon, a drug addict, or otherwise unable to meet the requirements for possessing a firearm in Illinois.  *See* Pls. Br. 18.

To be sure, citizens of Illinois are not required to "complete a required level of firearms safety training" to obtain a FOID card.  State Br. 25.  Ms. Shepard, of course, has completed no fewer than five training courses in the safe handling of handguns.  *See* Pls. Br. Exh. C, Shepard Decl., Doc. 39-1, ¶ 4.  And at any rate, this Court's decision in *Moore* did not hold that the right to carry a firearm extends only to citizens who have completed State-approved training courses.  *Moore* did state that "some states sensibly require that an applicant for a handgun permit establish his competence in handling firearms," 702 F.3d at 941, and Plaintiffs do not quarrel with that proposition.  But this does not mean that, *where there is no means to demonstrate the requisite training*, a person can be forbidden from exercising her Second Amendment rights.  Again, such a regime effectively

amounts to a flat ban on carrying firearms in public, and that is precisely the regime that will prevail in Illinois until carry license applications are available and being processed according to the FCCA's requirements.  Indeed, as of today a citizen of Illinois has no means of fulfilling the State's training requirement.  *See Concealed Carry Act Frequently Asked Questions*, ISP, http://www.isp.state.il.us/firearms/ccw/ccw-faq.cfm ("On September 7, 2013, the ISP will begin approval of certified firearms instructors and firearm training courses.").

The State also claims that the additional nine months provided by the FCCA, on top of the seven months already provided by the stay of this Court's mandate in *Moore*, are required to actually start issuing carry permits due to longstanding "deficiencies" in the State's regulatory apparatus that pre-date both the enactment of the FCCA in July of 2013 and this Court's decision in *Moore* in December of 2012.  State Br. 24.  But the infringement of Second Amendment rights by Illinois's carry ban "stands as a fixed harm" to the law-abiding citizens of Illinois and inflicts irreparable injury upon them "every day it remains on the books." *Ezell*, 651 F.3d at 698, 699.  Illinois's failure to remedy pre-existing administrative inadequacies of which it has long been aware cannot excuse the continued violation of Plaintiffs' fundamental, enumerated constitutional rights. Furthermore, the State's discussion of increased "pressures" that a concealed carry

licensing system was expected to place on a "FOID card system, which was already stretched thin and required data system modernization," State Br. 24, hardly inspires confidence that the ISP will be able to meet the FCCA's deadlines for implementing a concealed carry licensing system.

4.     In the final analysis, it is the State, not Plaintiffs, that misunderstands the import of this Court's initial stay and subsequent issuance of the mandate in *Moore*.  The State appears to believe that this Court's actions have given Illinois *carte blanche* to continue violating its citizens' Second Amendment rights so long as it has enacted a law that will permit its citizens to carry firearms at some point in the future.  *See* State Br. 18-19.  Again, the State argues that the mere enactment of the FCCA, even when that enactment has had no practical effect on Plaintiffs' ability to carry a firearm in public, has mooted this case.  While the FCCA promises that Plaintiffs may enjoy that right in nine (now eight) months, under the State's theory this case would still be moot even if the FCCA did not promise relief for nine years.  But this case is not moot regardless of whether the FCCA promises relief in nine years, nine months, or nine days; a case is not moot until it is actually moot.  *See Selcke v. New England Ins. Co.*, 2 F.3d 790, 792 (7th Cir. 1993) ("[A] case does not become moot merely because it is highly likely to become moot shortly.").

The State's confusion is illustrated by its insistence that, "if this Court were inclined to grant plaintiffs injunctive relief, each of the approximately 27,000 plaintiffs should be required to demonstrate to the district court that they should be allowed to carry concealed weapons in public." State Br. 28-29. But this Court has already determined that Plaintiffs are entitled to "the entry of [a] declaration[] of unconstitutionality and [a] permanent injunction[]"—period, full stop. *Moore*, 702 F.3d at 942. The Court, to be sure, stayed its mandate "to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public." *Id*. But this does nothing to help the State's case.

As an initial matter, the stay would have been wholly unnecessary had the Court envisioned a mere promise to stop violating Plaintiffs' Second Amendment rights without more sufficient to moot the case, for the Illinois legislature surely could have passed such law in less than six months.

But more importantly, the directive to the district court to enter a declaration of unconstitutionality and an injunction clearly anticipates the possibility that the Illinois legislature would not moot this case. One way this could have happened is if the Illinois legislature did nothing. *Cf.* Mot. to Stay Mandate for an Additional 30 Days at 3, Nos. 12-1269 & 12-1788 (7th Cir. June 3, 2013), ECF No. 73 ("This

additional time will avoid a circumstance in which there is no state law in place
governing the carrying of firearms in public places, a circumstance that this
Court's original, 180-day stay *anticipated* and set out to avoid." (emphasis added)).
Another way this could have happened is if the Illinois legislature passed a law that
did not relieve Plaintiffs of the burden imposed by the State's ban on carrying
firearms in public.  And this is what has happened:  the Illinois legislature has
passed a law that does not (yet) provide any avenue for Plaintiffs lawfully to carry
firearms in public to defend themselves.  In such a circumstance, the effect of this
Court's mandate in *Moore* is clear:  Plaintiffs are entitled to a declaration of
unconstitutionality and a permanent injunction prohibiting the continued
enforcement of the Illinois laws that this Court has already held unconstitutional
and that continue to infringe their fundamental Second Amendment rights every
day they remain on the books.

## CONCLUSION

For the foregoing reasons, the decision below should be reversed and this
case should be remanded with instructions that the district court forthwith enter a
declaration of unconstitutionality and an injunction prohibiting Defendants from
enforcing Illinois's ban on carrying firearms in public—codified at 720 ILCS 5/24-
1(a)(4)&(10) and 720 ILCS 5/24-1.6(a)(3)(A)-(B)—against Ms. Shepard and

members of the Illinois State Rifle Association for carrying firearms in a manner

consistent with the limitations set forth in Section 65 of the FCCA.


Dated:  August 14, 2013                    Respectfully submitted,

William N. Howard                          s/ Charles J. Cooper
LOCKE LORD LLP                             Charles J. Cooper
111 South Wacker Drive                     David H. Thompson
Chicago, Illinois 60606                    Peter A. Patterson
(312) 443-0333                             COOPER & KIRK, PLLC
(312) 896-6433 (Fax)                       1523 New Hampshire Avenue, N.W.
                                           Washington, D.C. 20036
                                           (202) 220-9600
                                           (202) 220-9601 (Fax)


*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 5,883 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and CIRCUIT RULE 32(b) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Office Word 2007 with 14-point Times New Roman type.

<u>s/ Charles J. Cooper</u>
Charles J. Cooper
*Attorney for Plaintiffs-Appellants*

Dated:  August 14, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/ Charles J. Cooper</u>
Charles J. Cooper